# VANCE *v.* MOTTLEY.

## (*Nashville.* March 4, 1893.)

1. BANKS AND BANKING. *Cashier's liability.*

A bank cashier who, without authority or necessity, employs an assistant on his own account, is liable for moneys of the bank fraudulently embezzled by such assistant while thus employed, upon the suit of the bank, its assignee, or successor—the cashier having fraudulently concealed the fact of such embezzlement after it came to his knowledge, and the successor having purchased the bank's entire assets, subject to its liabilities, without knowledge of the embezzlement.

2. SAME. *Same.*

A bank cashier is held to the exercise of reasonable care, skill, and diligence in the discharge of his duties. He becomes personally liable to the bank for losses resulting from loans negligently made by him to insolvent parties.

Cases cited and approved: Wallace *v.* Bank, 89 Tenn., 643.

3. STATUTE OF LIMITATIONS. *Fraudulent concealment of cause of action.*

The statute of limitations does not run against a cause of action fraudulently and effectively concealed from the party entitled to sue thereon by the party subject to suit during the time of such concealment. Example: A bank cashier became personally liable to his bank for the fraudulent embezzlement of the bank's funds by his assistant. He fraudulently concealed the cause of action for more than six years after it occurred, from the bank, its assignee and successor.

*Held:* The statute of limitations did not run during such concealment of the cause of action.

4. SAME. *Same. Knowledge of director not chargeable to corporation.*

And, in such case, the bank is not chargeable with the knowledge of the embezzlement by one of its directors who colludes with the de-

linquent cashier in fraudulently concealing the facts from the officers and the other directors of the corporation.

---

FROM WILSON.

---

Appeal from Chancery Court of Wilson County. GEO. E. SEAY, Ch.

E. E. BEARD and W. R. CHAMBERS for Vance.

STOKES & STOKES for individual creditors of S. T. Mottley.

J. N. McKENZIE and R. P. McCLAIN for assignees of Bank.

A. D. BRIGHT, Sp. J.  The original bill in this cause was filed in the Chancery Court at Lebanon to wind up the estate of S. T. Mottley, deceased, as an insolvent estate.

This is an appeal from a decree under a cross-bill filed in the said cause October 21, 1890, by Sanders and McKenzie, trustees of the National Bank of Lebanon and of the Bank of Middle Tennessee, in which they seek to hold the estate of S. T. Mottley liable for a defalcation in the first named bank, upon the ground that said default was occasioned by the negligent, careless, reckless, and fraudulent manner in which said Mottley, as

cashier and sole manager of said bank, operated the same, in placing in said bank without authority or necessity his nephew, S. M. Anderson, who, through a series of years, abstracted from said bank sums of money, amounting, on March 31, 1881, to the sum of $29,143.15, and that the same was accomplished by reason of said Cashier Mottley's reckless and careless management of said bank; that in March, 1881, A. W. Vick, the book-keeper and teller of said bank, discovered said default, and called the cashier's attention to it; but instead of Mottley, cashier, taking any steps to secure the bank, he entered into a fraudulent and corrupt arrangement with said Vick, who was teller and book-keeper, as well as a director, in said bank, and the only party, except Mottley and his nephew, who knew of said default, to conceal it from every one, under a promise from said Mottley to pay the same to the bank; that, under this arrangement, the books of the bank were falsified, false statements and reports of the bank's financial condition were made out regularly and sworn to by Mottley, cashier, said Vick, as Notary Public, swearing Mottley to the same, and said statements were published and circulated for the purpose of covering up and concealing the default; and by reason of said fraudulent collusion of Mottley and Vick the defalcation did not become known to the stockholders or other officers or patrons of the bank until after the death of said Mottley, in the spring of 1890; that Mottley

and Vick resorted to every device to fraudulently conceal said default from officers and directors of the bank, as well as all other persons, until after Mottley's death.

The trustees also claim the right to sue for this default for the second named bank, because in 1886 the National Bank of Lebanon ceased to do business; that the Bank of Middle Tennessee was organized with the same officers and stockholders of the National Bank, and, under Mottley's directions, assumed and paid the liabilities of the National Bank, and was entitled to the assets of the National Bank, which were not turned over to said bank by said Cashier Mottley.

The defense of the administrator of Mottley's estate is: That he was not guilty; that complainants' (Sanders and McKenzie, trustees) right of action is barred by the statutes of limitation. On this last defense—viz., that they were barred by the statutes of limitation—the Chancellor denied cross-complainants the relief sought by their bill.

The Chancellor decrees as follows:

As to the claim on the part of cross-complainants for the alleged deficit of $29,143.15, in the assets of the National Bank of Lebanon, and for which it is sought to hold the estate of S. T. Mottley personally liable, the Court disallows it, holding that, independent of any other defenses set up as against this item, the plea of the statute of limitation is sufficient; that it was conceded that the deficit and default occurred prior to April,

1881; that it was then discovered by Vick, the teller, book-keeper, and a director at the time in the bank; that it came to his knowledge while acting in all of these capacities, and while in the active discharge of his duties in connection with the bank; that each and every director is the agent of the bank under such circumstances, and notice to one is notice to the bank; that the fact that at Mottley's behest Vick concealed it from his co-directors does not affect the question. It may have been bad faith in him, but it was none the less notice to the bank, for which he was director and agent. More than six years had elapsed when this suit was instituted, and the claim is barred by the statute of limitations.

To this part of the decree cross-complainants except, and insist that the Chancellor erred in so holding.

They also seek by their cross-bill to hold Mottley's estate liable for certain loans made to various parties that were insolvent, and so known to Mottley, the cashier, and the same are uncollected and worthless. The Court held that Mottley, as cashier, in making loans and discounts, was bound to exercise reasonable skill, care, and diligence. If he failed in this, and the bank suffered damages in consequence, he was liable. That branch of the case was referred to the Master for report. In the Master's report Mottley's estate is charged with various debts that were lost by his negligence. Exceptions to these items were overruled by the

Court and the report confirmed, from which Mottley's administrator appeals and assigns errors.

In January, 1866, the National Bank of Lebanon was chartered under the national banking Act. Its charter expired January, 1886. There were five stockholders of this bank, who were its directors. The capital stock was $50,000, S. T. Mottley owning $38,000, who was also cashier, Major Vick owning $1,000, W. R. Schaver $1,000, R. P. McClain $1,000, and Judge Green $9,000, as trustee, etc. Major Vick was the teller. Mottley, the largest stockholder and cashier of this bank, managed and controlled it. Mottley placed in the bank his nephew, Anderson, as clerk, etc., without salary from the bank, but under the employment of Mottley, his uncle, who personally paid his salary. On March 31, 1881, the teller, Vick, discovered that there was a defalcation of $29,143.15, and he told the cashier, Mottley, of the same, who ordered him not to let any one know of this shortage, but to keep same a secret, which Vick did until 1890, when he told R. P. McClain of it. Mottley nor Vick ever disclosed this shortage or default to the other directors, but covered up this fraud, and made fraudulent balance-sheets, made false and fraudulent publications of the condition of the bank from time to time, made false and fraudulent statements in regard to the condition of the bank to the bank examiner. This shortage or defalcation was alleged to be due to Anderson, Mottley's clerk. Mottley

knew of it, and promised, or rather told, Vick that he would make it good, but failed to do so.

In 1886 the charter of this bank expired, and the stockholders chartered and organized the Bank of Middle Tennessee. The capital stock of this bank was $25,000, of which S. T. Mottley owned $13,000, Vick, Schaver, and McClain $1,000 each, and Judge Green $9,000. Mottley was made cashier of this bank. Upon the organization of this bank, the stockholders and directors, being the same as in the National Bank, it was agreed that the new bank (the Bank of Middle Tennessee) was to take all the assets of the old bank, the National Bank, and assume all the liabilities of the old bank, pay its debts, etc., which was done; the said Green, Mc-Clain, and Schaver still not knowing of the fraud still being practiced upon them by Mottley and Vick, all the time believing that the old bank was entirely solvent, and, having no knowledge of the defalcation or loss of said $29,143.15, they still having the most implicit confidence in Mottley and Vick. Mottley being by far the largest stock-holder, and reputed wealthy and of good character, no suspicion rested upon him nor upon Vick. Mottley managed the bank to suit himself, consulting none of the other directors.

In the spring of 1890 Mottley died, and there-upon R. P. McClain was elected cashier, and accepted the position, wholly ignorant of the true condition of the bank; and while in the discharge of his duties as a faithful officer, seeking out the

assets of the bank, when Vick, who was still tel-
ler of the bank, disclosed this shortage to Mc-
Clain, who at once notified the other directors,
and the bank closed and made the assignment to
Sanders and McKenzie.

Mottley and Vick knew of this loss of the
$29,143.15 as early as March, 1881, and, by agree-
ment, kept this information from the other di-
rectors; by false and fraudulent schemes, devices,
and false entries upon the books of the bank, by
false reports and sworn statements, fraudulently
concealed this shortage from the other directors.
The other directors, nor, indeed, any one could, ex-
cept by a thorough and minute examination of
the books of the bank, discover this loss.

The proof in the record abundantly establishes
the fact that this money was lost by the gross
negligence of Mottley; that he fraudulently con-
cealed this loss, and took no steps to recover it;
that he continued this fraud and concealment, and
perpetrated a gross fraud upon the new bank
when, by express agreement, it was to take the
assets of the old bank, and assume its liabilities.
The new bank did this, believing that the assets
and liabilities were as represented by Mottley.

It is insisted that the statutes of limitation be-
gan to run in favor of Mottley on March 31,
1881, when the loss was first discovered by Vick,
and was complete before the cross-bill was filed.
We hold that the statute did not begin to run in
favor of Mottley until the loss or defalcation of

the $29,143.15 was disclosed to the stockholders, and discovered by them in 1890, after Mottley's death.

The fraud practiced on the new bank was in the concealment of the liability and true condition of the old bank to the extent of the $29,143.15.

The fraudulent concealment by Vick and Mottley of the condition of the accounts of the old bank, done by agreement between them, prevented actual notice, and took the case out of the rule of constructive notice to the other directors. 5 Pickle, 643.

A cashier is bound to exercise reasonable skill, care, and diligence in the discharge of his duties; if he fails in such skill, or omits such care, and the bank suffers damage as a consequence, he is liable. 5 Pickle, 643.

The record abundantly shows that it was through the want of the exercise of reasonable skill, care, and diligence in the discharge of the duties imposed upon Cashier Mottley, and his failure to properly discharge his duties as such, that the bank was damaged and suffered the loss of the $29,143.15, and he should be held liable for same. It is insisted that Mottley, if guilty of occasioning this loss, is guilty of a tort, and only liable for a tort, and, as he is dead, the tort died with him, and that there can be no recovery had against him. The tort may be waived, and action for value maintained against the wrong-doer or his representative.

It is assigned as error that Mottley's estate was charged with being liable for the loans made by him, as cashier, to meet four notes of Waters & Co., aggregating $11,362.79; also various notes on Anderson & Co.; also with the Wood note for $1,000. These loans were made by Mottley to insolvent parties, without security, thereby entailing a loss to the bank. It was through want of care and diligence and reasonable skill upon the part of the cashier, Mottley, that the loans were made and the loss sustained. The Chancellor confirmed the finding of the Master upon these claims, and their findings will not be disturbed. 1 Pickle, 218, 251.

The decree of the Chancellor was erroneous in refusing to decree in favor of the trustees, Sanders and McKenzie, cross-complainants, holding the estate of Mottley liable for the said sum of $29,143.15, and the decree as to that is reversed, and decree will be entered for the $29,143.15, with interest from the date and time when the new bank was organized in 1886.

With this modification the decree will in all other respects be affirmed. The costs of this appeal will be paid by Complainant Vance, as administrator of Mottley.

Judge Caldwell, by reason of relationship to some of the parties, did not sit upon the hearing of the cause.