## HOWELL *v.* THOMPSON.

### (*Knoxville.*     October 10, 1895.)

1. HOMESTEAD.   *Not cut off by divorce, when.*

    A widow is entitled to homestead out of the lands of which her former husband died seized and possessed, although she had obtained divorce *a mensa et thoro* from him.  (*Post, pp. 398–400.*)

    Cases cited and approved: Chenault *v.* Chenault, 5 Sneed, 250; Boggers *v.* Boggers, 6 Bax., 299; Jarnigan *v.* Jarnigan, 12 Lea, 292.

2. SAME.   *Not defeated by husband's conveyance to wife.*

    The wife is not estopped to claim homestead in lands conveyed to her without consideration by the husband, upon the deed being set aside by his creditors, when she did not participate in the fraud.  (*Post, pp. 400, 401.*)

    Cases cited and approved: Ruohs *v.* Hooke, 3 Lea, 302; Powell *v.* Warren, 1 Leg. R., 47.

3. LIMITATIONS, STATUTE OF.   *Of three years applies, when.*

    An action by a creditor to set aside a transfer of bank stock by his debtor as fraudulent is within § 3470 (M. & V.) Code, providing that actions for the detention or conversion of personal property must be brought within three years from the accruing of the cause of action.  (*Post, pp. 401, 402.*)

    Code construed: § 3470 (M. & V.); § 2773 (T. & S.).

4. SAME.   *Begins to run, when.*

    The right of action of a surety to set aside a fraudulent or voluntary conveyance of the principal debtor's property, and subject it to payment of his debts, accrues at the date of the conveyance where the principal had previously defaulted; and statutes of limitations begin to run from that date as between the surety and the grantee holding adversely, although the surety had not paid, or suffered judgment for, anything, or even been sued on account of his liability.  (*Post, pp. 402–406.*)

Howell *v.* Thompson.

Code construed: §§ 5031, 5036 (M. & V.); §§ 4288, 4293 (T. & S.).

Cases cited and approved: Ramsey *v.* Quillen, 5 Lea, 190; McBee *v.* Bearden, 7 Lea, 734; Mulloy *v.* Paul, 2 Tenn. Ch., 163.

Cited and distinguished: Gibson *v.* Jones, 13 Lea, 684; Glass *v.* Williams, 16 Lea, 697.

5. SAME. *Fraudulent concealment of cause of action.*

The principal debtor's fraudulent concealment of his default from his surety does not prevent the running of the statute of limitations as against the surety in favor of one holding the debtor's property adversely under a fraudulent or voluntary conveyance. (*Post, p. 405.*)

6. SAME. *Sureties are creditors, when.*

Sureties are creditors of their defaulting principal, before they have paid the debt or suffered judgment, within the statutes providing that creditors may, before obtaining judgment, bring suit to set aside fraudulent conveyances of their debtor's property, and prescribing limitations within which such suits shall be instituted. (*Post, pp. 403–405.*)

Code construed: §§ 5031, 5036 (M. & V.); §§ 4288, 4293 (T. & S.).

Cases cited and distinguished: Greene *v.* Starnes, 1 Heis., 582; Saylors *v.* Saylors, 3 Heis., 533; O'Neal *v.* Smith, 10 Lea, 340; McBee *v.* Bearden, 7 Lea, 733; Howell *v.* Cobb, 2 Cold., 104; Armstrong *v.* Croft, 3 Lea, 191; Spencer *v.* Armstrong, 12 Heis., 707; Marshall *v.* Hudson, 9 Yer., 57; Maxey *v.* Carter, 10 Yer., 521; Gibson *v.* Jones, 13 Lea, 684; Cocke *v.* Hoffman, 5 Lea. 105; Glass *v.* Williams, 16 Lea, 697; Reeves *v.* Pulliam, 7 Bax., 120; Jamison *v.* Lillard, 12 Lea, 690.

---

FROM HAMBLEN.

---

Appeal in error from Chancery Court of Hamblen County. JNO. P. SMITH, Ch.

NAT. B. JONES and SHIELDS & MOUNTCASTLE for Howell.

JAMES G. ROSE, HOLLOWAY & ESSARY, and W. S. DICKSON for Thompson.

WILKES, J. Jas. E. Thompson was Trustee of Hamblen County. Complainants were sureties upon his official bond. He made default in office prior to 1888, and suit was brought by Hamblen County against complainants as his sureties for such default, August 9, 1891. Pending this suit, in October, 1892, and before the liability of the complainants had been judicially determined, complainants filed their bill against defendant, Josephine, former wife of James E. Thompson, as well as his administrator and heirs, seeking to set aside a transfer by Thompson to his wife of ten shares of stock, of $150 each, in the First National Bank of Morristown, made April 10, 1888, and, also, a conveyance to her and her daughters of his real estate in Morristown.

It was charged that these conveyances of real estate were made in compromise of a divorce proceeding which his wife had brought against him, and that they were without real consideration, voluntary, and fraudulent as against creditors. It was also charged that said J. E. Thompson had fraudulently concealed the fact of his liability and default in office until about the time the county filed its bill, and complainants sought to impound the bank

Howell v. Thompson.

stock and real estate until the termination of the litigation with the county, and, then, if held liable, to apply it to their indemnity and reimbursement.

On May 10, 1895, complainants filed their amended and supplemental bill, repeating the charges already made, and stating, further, that the suit had been decided in favor of the county, and that they had been compelled, on October 3, 1894, to pay some $4,800 on account of the default, and they prayed that the bank stock and real estate be sold to indemnify them on account of this payment. The administrator and heirs answered the bill, but their defense need not be further noticed, as there is no question affecting them before the Court in this suit. Defendant, Josephine Thompson, answered, insisting that the decree in her favor in the divorce proceeding did not dissolve the bonds of matrimony, but only decreed a separation from bed and board, and that she was the widow of Jas. E. Thompson when he died, and, as such, entitled to dower and homestead in the real estate conveyed to her by her husband, and she asked that it be assigned to her. She claimed, also, that she had held the bank stock since April, 1888, as her own, and in her own name drawing the dividends, and was entitled to it under the statute of three years' adverse claim.

On May 24, 1895, the cause was heard and decree rendered against the administrator of Jas. E. Thompson for $4,866.91; and it was adjudged that Thompson's conveyance of the real estate to his

wife and daughters was voluntary and void as to complainants, and it was decreed to be sold for their indemnity, subject, however, to the homestead right. The Court below denied relief as against the bank stock, holding the action to subject it barred by the adverse claim of three years, and that Josephine Thompson was entitled to it and to homestead in the real estate, and the decree was executed by a sale of the real estate subject to her homestead right, but denying her dower.

From so much of the decree as holds that Josephine Thompson is the widow of Jas. E. Thompson, and entitled to homestead in his real estate, and that she has a right to hold the bank stock under the statute of three years' adverse claim, the complainants appealed, and they have assigned errors raising these questions, which are the only ones now involved.

First, in regard to the real estate. We think it evident that the divorce decree pronounced was not absolute from the bonds of matrimony, but only from bed and board, and did not deprive the wife of her rights in his estate in the event of her surviving her husband, which has happened. *Chenault* v. *Chenault*, 5 Sneed, 250; *Boggers* v. *Boggers*, 6 Bax., 299; *Jarnigan* v. *Jarnigan*, 12 Lea, 292; 2 Bishop, Marriage and Divorce (4 Ed.), 726 *et seq.*

The only right, as widow, insisted on in this Court is that of homestead in the real estate. There appears to have been no appeal by her from the decree denying her dower. We do not think the

wife is estopped to claim homestead because of the conveyance by her husband to her. She took the conveyance, so far as we are able to see, in good faith, and in settlement of her claims and right to alimony out of his estate, and it was confirmed to her by decree of the Court in the divorce proceedings. We can see, therefore, no fraudulent intent on her part in taking deed to this property which would now operate to estop her to claim homestead out of it. Indeed, if this conveyance were in fact fraudulent, she would still be entitled to claim her homestead right in the property conveyed. *Ruohs* v. *Hooke*, 3 Lea, 302; *Powell* v. *Warren*, 1 Leg. Rep., 47.

We are of opinion there is no error in that portion of the Chancellor's decree holding her entitled to homestead out of the real estate, and the decree is to that extent affirmed.

Second, in regard to the bank stock. Defendant, Josephine, does not claim to hold this under the divorce decree as alimony, but by virtue of her adverse possession since April, 1888, under the provisions of the Code (M. & V.), § 3470.

For complainants it is insisted that this transfer of bank stock to the wife was voluntary, and, as to the creditors of the husband, fraudulent, because the husband was at that time in default, and that they have a right to have the same subjected to reimburse them, and that their cause of action arose in December, 1894, when they were compelled to pay

26—11 P

the judgment on account of their principal's default. The defendant, Josephine, however, insists that their right of action, if any, accrued when the stock was transferred to her in April, 1888, and was barred by her adverse holding for three years before this suit was brought or the action was commenced by the county. The matter is narrowed down to the question whether the statute applies and when it began to run.

We think there can be no doubt but that the statute does apply in this case. It provides that "actions for injuries to personal or real property, and actions for the detention or conversion of personal property (must be brought) within three years from the accruing of the cause of action." Code (M. & V.), § 3470.

The important inquiry is, when did the statute begin to run in favor of the voluntary donee?

The Code (M. & V.), § 5036, provides: "In no case shall the limitations of actions be held to commence running in favor of a fraudulent or voluntary possessor until the creditor to be affected by the fraudulent or voluntary conveyance has a right of action to test the validity of such conveyance."

The statutes of our State are peculiar in that they provide different and cumulative rights of action in favor of sureties and accommodation indorsers, as against their principals.

By the Code (M. & V.), § 4364, Subsections 1 and 2, it is provided that sureties shall be entitled

to judgment by motion against their principals (1) whenever judgment has been rendered against them as sureties, (2) whenever such judgment, or any part thereof, has been paid by the surety. And again, under § 5031, it is provided that any creditor, without first having obtained a judgment at law, may file his bill in chancery for himself, or for himself and other creditors, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering and delaying creditors, and subject the property, by sale or otherwise, to the satisfaction of the debt. And sureties and accommodation indorsers are held to be creditors, even before payment of their principal's debts, in the sense of this statute. *Greene* v. *Starnes*, 1 Heis., 582; *Saylors* v. *Saylors*, 3 Heis., 533; *O'Neal* v. *Smith*, 10 Lea, 340; *McBee* v. *Bearden*, 7 Lea, 733; *Howell* v. *Cobb*, 2 Cold., 104; *Armstrong* v. *Croft*, 3 Lea, 191; *Spencer* v. *Armstrong*, 12 Heis., 707.

There are other cases which hold that, although a right of action exists in favor of the creditors (including sureties and accommodation indorsers) before payment, or even rendition of judgment, still, upon rendition of judgment, and again on payment for the principal by the surety, or by a surety for his co-surety after judgment, a new and substantive right of action arises; and in these cases, as between the principal and surety, or the surety and his co-surety, the statute of limitations does not begin to run until

the payment is made, in cases where the right of
action is based on the payment. *Marshall* v. *Hudson*,
9 Yer., 57; *Maxey* v. *Carter*, 10 Yer., 521; *Cocke*
v. *Hoffman*, 5 Lea, 109; *Reeves* v. *Pulliam*, 7 Bax.,
120; *Jamison* v. *Lillard*, 12 Lea, 690; *Gibson* v.
*Jones*, 13 Lea, 684; *Glass* v. *Williams*, 16 Lea,
697. And this is the necessary implication and con-
struction of the Code (M. & V.), § 4364, Subsections
1 and 2.

It is apparent that, as between the surety and
principal the former can pursue either of the three
remedies provided. (1) By bill before judgment,
(2) by bill or motion after judgment, (3) by bill
or motion after payment of judgment. And the
failure to proceed upon the first ground will not
prejudice the surety in proceeding upon the second
or third, and this is expressly held in *Maxey* v.
*Carter*, 10 Yer., 521.

Conceding that the statute does not begin to run,
as between the principal and surety, until the latter
makes payment, when the action is based on such
payment, does this affect the right and status of
the voluntary or fraudulent grantee of the principal
who holds and claims in his own right as adverse
possessor for the time limited by statute? This in-
quiry is settled by our Court in favor of the ad-
verse possessor, and so as to protect his possession
and vest him with a right, although the statute may
not have run as against the voluntary or fraudulent
grantor. *Ramsey* v. *Quillen*, 5 Lea, 190; *McBee*

v. *Bearden,* 7 Lea, 734; *Mulloy* v. *Paul,* 2 Tenn. Ch., 163.

These cases all hold in direct terms, and upon mature consideration, that, as to the voluntary or fraudulent grantee, the right of action accrues to the party affected by such conveyance from the time the conveyance is made or adverse holding begins, and although, as to the fraudulent grantor, new rights may arise on the rendition of the judgment, and again on its payment, and the statute in such cases may not run until the judgment or its payment, still the grantee is not affected by these statutory provisions and remedies, but stands upon his own footing as adverse possessor from the time he begins the adverse holding.

We do not consider these cases as conflicting with *Gibson* v. *Jones,* 13 Lea, 684, and *Glass* v. *Williams,* 16 Lea, 697, in which the exact question was not considered or adjudicated, though possibly involved by the facts in the case. In this view of the case, it is not material if the fraudulent grantor concealed the cause or right of action as against his surety, inasmuch as the grantee stands in his own right as adverse possessor, and not any to be worked out through the grantor, but rather on such right acquired in opposition to the grantor.

Applying these principles to the case in hand, it is evident that Mrs. Thompson's right to the bank stock matured within three years from the date she began to hold it as her own, in April,

1888, and was perfected before even the county brought its action against her husband, in August, 1891, and before the original bill in this case was filed, and a new right, as against her, did not accrue on the rendition of the judgment against the sureties, or the payment of the money by them, though they may have had such new right as against her husband, their principal and her grantor. The consequence is, there is no error in the decree of the Chancellor as to the bank stock, and it is affirmed. The cause will be remanded, in order that Mrs. Thompson's homestead rights may be given her out of the real estate involved. The costs will be paid by appellants.