Boro v. Hidell.

MARY BORO *v.* DORA R. HIDELL.

(*Jackson.* April Term, 1909.)

1. **STATUTES OF LIMITATIONS.** Nonresidence of defendant
does not suspend their operation where complete relief may be
had by suit with publication.

The statute (Shannon's Code, sec. 4455), suspending the opera-
tion of the statutes of limitations while the person against
whom a right of action has accrued is absent from or resides
out of this State, does not apply to a suit to set aside a deed
of conveyance of land for fraud, because complainant may ob-
tain full and complete relief in a suit by publication in lieu
of personal service of process. (*Post, pp.* 86-96.)

Code cited and construed: Sec. 4455 (S.); sec. 3458 (M. & V.);
sec. 2762b (T. & S.).

Acts cited and construed: Acts 1819, ch. 28, sec. 1; Acts 1865,
ch. 10, sec. 3.

Cases cited and approved: Taylor v. McGill, 6 Lea, 294; Turcott
v. Railroad, 101 Tenn., 104; Green v. Snyder, 114 Tenn., 100.

Cases cited as bearing upon the question, but not on this special
phase of it: Smart v. Waterhouse, 10 Yerg., 94; Yancy v.
Yancy, 5 Heisk., 353, 354; Peak v. Buck, 3 Bax., 71; Morrow v.
Morrow, 3 Tenn. Chy., 532, 534; Wright v. West, 2 Lea, 78, 83,
84, 85; Ridge v. Cowley, 6 Lea, 167; Carlin v. Wallace, 13 Lea,
573; Barbour v. Irwin, 14 Lea, 720; Kempe v. Rader, 86 Tenn.,
191; Rose v. Wortham, 95 Tenn., 505, 508, 509; Nichols v. Loyd,
111 Tenn., 145; Maxey v. Powers, 117 Tenn., 381, 403, 404; Mil-
ler v. Wolfe, 115 Tenn., 234; Hamblen Co. v. Cain, 115 Tenn.,
279; Wright v. Cunningham, 115 Tenn., 445; Hardin v. Hassell,
118 Tenn., 143; Ray v. Haag, 1 Tenn. Chy. App., 249.

Case cited as overruled: Carlin v. Wallace, 13 Lea, 573.

Boro v. Hidell.

2. **SAME.** Fraudulent concealment of cause of action prevents their operation.

Where a cause of action is fraudulently concealed from the complainant, the statutes of limitations will not run until complainant discovers the fraud. (*Post, pp.* 96, 97.)

Cases cited and approved: Shelby v. Shelby, Cooke, 179; Porter v. Cocke, Peck, 30, 46; Haywood v. Marsh, 6 Yerg., 69; Reeves v. Dougherty, 7 Yerg., 232, 236, 237, 238; Smart v. Waterhouse, 10 Yerg., 105; Nicholson v. Lauderdale, 3 Humph., 200; Haynie v. Hall, 5 Humph., 290, 292; McLain v. Ferrell, 1 Swan, 48, 52; Peak v. Buck, 3 Bax., 71, 72; Vance v. Mottley, 92 Tenn., 310; Woodfolk v. Marley, 98 Tenn., 467, 471.

3. **PRINCIPAL AND AGENT.** Principal is affected with agent's knowledge about the particular matter, when.

Where complainant appointed her brother as her agent to obtain restitution of certain land of which she had been deprived by fraud, with the right and power to sue for said land, she was affected and bound by her said brother's knowledge of the fraudulent concealment of the cause of action from the date he discovered it. (*Post, pp.* 97, 98.)

Cases cited and approved: Bank v. Campbell, 4 Humph., 394; Tagg v. Bank, 9 Heisk., 479, 483, 484; Rhat v. Mining Co., 5 Lea, 1, 63; Bank v. Smith, 110 Tenn., 337, 345.

Cases cited and distinguished: Duke v. Harper, 6 Yerg., 280, 284, 287; Yarbrough v. Newell, 10 Yerg., 376, 381, 382.

4. **STATUTES OF LIMITATIONS.** Right of action is barred in seven years after complainant's agent discovered fraudulent concealment of cause of action, when.

Where complainant appointed and employed her brother as her agent to obtain restitution of certain land which she had been induced to convey by fraudulent representations, and her said brother acquired knowledge of the fraud in 1890, complainant's right of action was barred at the expiration of seven years thereafter. (*Post, pp.* 97, 98, 99.)

122 Tenn—6

Boro v. Hidell.

5.  **SAME.**  Vendor's concealment of cause of action  will not prevent their operation in favor of a fraudulent vendee.

The concealment of a cause of action by the vendor, or one procuring a conveyance to be made to the conveyee, will not prevent the running of the statutes of limitations in favor of a fraudulent vendee.  (*Post, pp.* 99, 100.)

Cases cited and approved:  Porter v. Cocke, Peck, 30, 46; York v.·Bright, 4 Humph., 312; Ramsey v. Quillen, .5 Lea, 184; Mulloy v. Paul, 2 Tenn. Chy., 155; Howell v. Thompson, 95 Tenn., 396, 404; Bates v. Preble, 151 U. S., 162.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—
A. B. PITTMAN, Chancellor.

T. K. RIDDICK and FINLEY & FINLEY, for complainant.

WRIGHT & WRIGHT, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

The bill in this case was filed to recover a half interest in forty-three acres of land lying on the Pigeon Roost road in Shelby county.

It is alleged, in substance, that the complainant was a niece of W. H. Hidell, the husband of the defendant Dora; that she had lived in the same house with him;

that the greatest confidence and affection existed between them; that she became a nun, and before doing so, or shortly thereafter, intrusted all of her property rights to him; that on April 24, 1877, he procured from her a deed to the half interest in the forty-three acres on the statement that it was necessary that the property should be in his name in order that her interest might be better protected in certain litigation then pending, in which the property was involved, referred to in the present record as the "Woodward suit."

It is further alleged that several years thereafter—that is, in 1888—W. H. Hidell wrote to the complainant a letter, in which he asked that she sign a certain deed, which purported on its face to be a deed of gift, of the same half interest in the forty-three acres to his wife, the defendant, Dora R. Hidell; that upon her objecting that, under the rules of the religious association to which she belonged, she could not make a deed of gift of any of her property, he replied in a long letter of date May 10, 1889, in which he claimed and represented that she was indebted to him for a fee of $200 paid to Mr. King, a lawyer at that time living in Memphis, for services in the litigation above referred to, and also that she was indebted to him in the sum of $300 for services which he himself had performed as a lawyer in the litigation referred to; that he had paid a considerable amount of taxes on the property, and that he had collected practically nothing from the rents, and that the property was worth only about $500; that the

deed, while purporting on its face to be a deed of gift, in order to avoid the State tax on sales, was not really such, but was supported by the considerations just stated; that he desired it made to his wife as a graceful recognition of the assistance she had given him from her own estate in saving the property out of the litigation in which it had been involved; that, yielding to these representations, she executed the deed on June 17, 1889, and mailed it to the said W. H. Hidell, but that complainant did not discover their falsity, or that a fraud had been practiced upon her, until 1908, a few days before she filed her amended bill, the substance of which has been above detailed.

W. H. Hidell died in 1896, and for several years prior thereto was confined in an asylum for the insane, and for three years before his confinement in the asylum was a person of failing intelligence.

The present bill was filed against the widow, the person to whom the deed was made. She denied all of the allegations of fraud, and also interposed the defense of the statute of limitations of seven years.

The purpose of the bill was to rescind the deed to the defendant, Dora R. Hidell, and to recover the land of her.

When the case was called for trial, certain issues were formulated and a jury called to try them. The issues and the responses of the jury thereto were as follows:

"(1)   Was the deed of April 24, 1877, obtained by

W. H. Hidell from complainant by promise to hold the property therein described in trust for complainant's use and benefit?   A.   Yes.

"(2)   Was the deed of June 17, 1889, to defendant, Dora Hidell, procured from complainant by W. H. Hidell by false and fraudulent misrepresentations?   A. Yes.

"(3)   When did the complainant, Mary Boro, learn the truth with regard to the value of the land conveyed by her in said deed of June 17, 1889, the amounts expended by Hidell on said land in her behalf, and the character and value of the services claimed to have been rendered by said Hidell in the Woodward suit?   A. Personally in 1908, but through her agent, James Boro, in 1890.

"(4)   When, by the exercise of due diligence upon her part, should she have learned the truth with regard to these transactions?   A.   1890.

"(5)   Was Mary Boro informed that the deed of 1890 to Dora R. Hidell was procured from her by fraud? If so, when?   A.   Yes; in 1890, when her agent, James Boro was informed.

"(6)   When could she, by due diligence, have been so informed?   A.   1890.

"(7)   What was the amount of rents received by W. H. Hidell from the half interest of complainant in the forty-three acres involved in this lawsuit up to the 17th day of June, 1889, when the property was conveyed to the defendant, Mrs. Hidell?   A.   $550.

"(8)   When, if at all, did the confidential relation between Mary Boro and W. H. Hidell cease to exist? A.   1890."

Upon the verdict of the jury coming in, the complainant first made a motion for a new trial, which was overruled. She then moved the court for a judgment in her favor upon the verdict. This was overruled. Then the defendant moved for a judgment on the verdict in her favor, which was granted, to the effect that the defendant had been in adverse possession of the property in controversy, claiming it under the deed of June 17, 1889, from the date of that deed, and that this deed was duly registered in Shelby county; that her possession had been continuous; that she was protected by the statute of limitations of seven years; that nothing had been shown by the complainant to affect the bar of the statute; that the complainant's bill should be dismissed at her cost.

From the foregoing decree, the complainant appealed to this court, and has here assigned errors.

In order to properly understand the purport of the verdict as to the agency of James Boro, it should be stated that the record shows the following facts:

James Boro is a brother of the complainant. In the fall of 1889, or the early part of 1890, when he learned that the deed of June 17th had been made, he wrote to his sister, the complainant, that her uncle, W. H. Hidell, had robbed her of her property. She says in her testimony that he did not relate to her the particulars

of the fraud, or in what it consisted, and he says that he does not recall that he did.  It seems the letters that passed between the brother and sister, covering that period, have been lost or destroyed.  We think it very remarkable that he did not inform her of the particulars —so remarkable as to be almost incredible.  In stating the matter in this way we do not, in the least, mean to impeach the veracity of the complainant.  We deem her to be an honest, upright, good woman.  She has no doubt forgotten the particulars of the transactions of that time; her time and thought having been wholly devoted to her religious vocation.  It is probably a true construction of the answer to the third issue that the jury meant to say that she had learned of these matters through her brother in 1890, that is, that he had informed her of the particulars; but we have not decided the case upon this assumption.

It appears, from complainant's cross-examination, and from the cross-examination of James Boro, that in the latter part of 1889, or the early part of 1890, she appointed her brother, James Boro, as her agent to look after her interest in the forty-three acres, and also a storehouse on Second street, in Memphis, and all other property which she had claims to in the hands of W. H. Hidell, and to recover for her whatever he could.

James Boro admits, in his deposition, in the cross-examination, that he had full knowledge as far back as 1890 of all of the particulars of the fraud; that he then knew that Hidell's letter of May 10, 1889, which

his sister had sent to him, along with other letters of Hidell's misrepresented the facts to her in the various particulars above mentioned, and which are referred to in the third issue submitted to the jury. These misrepresentations consisted of misstatements which Hidell made to her as to what he had paid Mr. King, and what she owed him, and as to the value of the property, and as to what he had gotten out of the property, by virtue of which misrepresentations he procured the deed from the complainant. We say the evidence shows clearly that in 1890 James Boro knew fully the extent of the fraud. He was then the agent of the complainant, with full power to assert her rights.

The present bill was not filed until the lapse of eighteen years after the fraud was perpetrated. During all this time the defendant, Dora R. Hidell, had been in adverse possession of the land, claiming it as her own.

1. It is insisted that the statute of limitations of seven years (Acts 1819 [2 Scott's Comp. Laws, p. 482] c. 28, section 1) did not run at all, because during the whole time the defendant, Dora R. Hidell, was a nonresident of the State.

In support of the point the complainant refers to section 4455 of Shannon's Code, which reads as follows:

"If at any time any cause of action shall accrue against any person who shall be out of this State, the action may be commenced within the time limited therefor, after such person shall have come into the State; and after any cause of action shall have accrued, if the per-

son against whom it has accrued shall be absent from, or reside out of the State, the time of his absence or residence out of the State shall not be taken as any part of the time limited for the commencement of the action."

It is insisted that the terms of this statute are broad and general, and that no exception thereto can be made by the court. We are referred by complainant's counsel, in the very able brief filed, to numerous cases from other states having similar statutes, in which it has been held by the great majority of them in accordance with the contention just stated. On the other hand, it is insisted by defendant's counsel that the decisions of this court bearing upon the question hold that where the action may prosecuted without the necessity of personal service upon the defendant, and full relief granted, the statute quoted does not apply.

The contention of defendant's counsel is correct as to the state of our authorities upon the subject. The leading case is *Taylor* v. *McGill,* 6 Lea, 294.

In this case the facts alleged in the bill were, in substance, that one A. Hynes Ewing had died the owner of certain real estate; that before his death the land had been levied on by one Marshall for a debt of $800; that it was sold after his death; that the widow of Ewing had fraudulently purchased it with a view to placing it out of the reach of creditors; that there were no personal assets; that the administratrix had been absent from the State most of the time since the death of her

husband; that complainant had certain debts against the estate of the deceased. The purpose of the bill was to set aside the deed made to the widow and to subject the land as the land of the decedent. The statute of limitations of three years (against nonresident creditors) applicable to the estates of decedents was pleaded. It was insisted in behalf of complainant's in that case that the section of the Code which we have above quoted, taken from the act of 1865 (Acts 1865, p. 27, c. 10, section 3), prevented the running of the statute of limitations. In response to this contention the court said:

"What is not within the purpose or meaning nor within the mischief to be remedied by a statute cannot be held included in the law, even though literally the language might include it. . . . The nature of this suit, then, will solve the question as to the application of the statute. Could the parties to these bills have proceeded, within the time of absence of the administratrix, to enforce the precise claim they now make as creditors of A. Hynes Ewing, deceased, against his real estate, or interest which he owned in real estate of his deceased father, under the facts stated in these bills? There were no personal assets to be exhausted before proceeding to subject the real estate descended to the payment of the debts of the deceased debtor. The heirs of said deceased are not alleged to have been nonresidents, nor any difficulty in making them parties to a proceeding under the act of 1827 (section 2267 of the Code of 1858). By this section this proceeding may, it

Boro v. Hidell.

is true, be instituted by the administrator; but precisely the same right is given on the part of a 'bona fide creditor whose debt remains unpaid.' Either may file his bill or petition in the courts having jurisdiction, have an account of the debts due, and a sale of the land for their payment, when they are shown to exist as required by the statutes. We can see no possible difficulty in the way of these creditors, had they chosen thus to proceed. There might have been the same proceeding, in substance, as the one now before the court, and there was no legal obstacle to such a proceeding. The fact that the widow and administratrix had purchased the lands might have been alleged, precisely as here, and she have been made party by publication. The court, having the property under its jurisdiction and control, could have effectuated a decree against it, and thus, if these creditors had the rights now claimed, they could have been made good and effectual for the satisfaction of their debts. . . . The principle we decide is that where the party had his remedy complete and unaffected by the absence of the administrator or defendant then such absence has not affected his right to sue, and is therefore not within the purpose of the act of 1865, preventing the lapse of time effectuating the bar of the statute during the absence of a party to be sued."

It was accordingly held that the bar was complete, more than three years having elapsed between the death of the deceased and the filing of the bill.

The foregoing case was reaffirmed in the latest case

we have upon the subject. *Turcott* v. *Railroad,* 101 Tenn., 104, 45 S. W., 1067, 40 L. R. A., 768, 70 Am. St. Rep., 661. The facts of that case were in substance that a person who had been injured in the shops of the railroad company in Vicksburg, Miss., a year and a half before the action was brought in Shelby county, this State, was met, when he did bring suit, by a plea of the statute of limitations of one year applicable to that subject. He endeavored to escape the operation of the statute by the fact that the railroad company was a nonresident corporation and had never complied with our statutes regulating the entry of foreign corporations into this State, concerning the registration of their charters, etc. It was shown that, although the company had not so complied, it had been doing business in Shelby county for many years, and had a regular corps of agents for the purpose. The court held that, although there had been no compliance with the statutes above referred to concerning foreign corporations, yet the company was all the time liable to suit, since it actually had agents within the State and was doing business here. It was further held that, being so liable, the action could have been brought at any time within the one-year term, and not having been brought, the plaintiff in that case was barred. The same principle was reaffirmed as late as 1904 in the case of *Green* v. *Snyder,* 114 Tenn., 100, 84 S. W., 808.

We have four other cases in this State; but three of them (*Ridge* v. *Cowley,* 6 Lea, 167; *Barbour* v. *Irwin,*

14 Lea, 720; *Kempe* v. *Rader,* 86 Tenn., 191, 6 S. W., 126) have no bearing upon the special phase of the question we now have before us. There is another case, *Carlin* v. *Wallace,* 13 Lea, 573, that does have such bearing, though perhaps not in a direct way. In that case it appeared that Carlin had previously bought from Wallace, a resident of Georgia, a lot in the city of Chattanooga by title bond. He paid part upon the property, and failing to pay the rest of the purchase money, a suit was brought against him, and the lot sold therefor, and purchased by Carlin at the master's sale. He stated in his bill that when he made a certain payment there was an agreement between Wallace and himself that, if any mistake in calculation had been made, Wallace would return the difference, and that in fact a mistake of a certain sum was made, for which Wallace was indebted to him. The bill also alleged that Carlin had now paid for the land, and that he was entitled to a deed from Wallace, with covenants of warranty. He attached some other property that Wallace had in Chattanooga to make good the claim set forth in the bill. More than six years, the limitation period, had expired when the bill was filed, and the statute of limitations was accordingly pleaded by Wallace. The court held in that case that no time had commenced to run against the complainant, although he might at any time within the six years, have commenced his action in the form of an attachment proceeding, as was finally done.

A distinction is to be taken between a suit by attach-

ment and one of the kind we have now before the court, or one such as was the subject of the opinion in *Taylor* v. *McGill,* because, in attachment cases, complete relief cannot be given, inasmuch as, if any balance be due upon the debt after the exhaustion of the property attached, there can be no personal judgment rendered therefor, while in the kind of case we now have before us there is no necessity for personal judgment. However, the case of *Carlin v. Wallace* was, in effect, overruled in an oral opinion delivered in a recent case at Knoxville. *Templeton* v. *British Association.*

In the kind of case we now have before us, complete relief could be given without personal service of process. It is a real action brought in the county where the land lies, and the parties interested may be made parties to the suit by publication. *Ray* v. *Haag,* 1 Tenn. Ch. App., 249.

It has been the constant practice in this State to proceed in real actions in the manner stated, when no personal service could be had upon the persons against whom the relief was sought. To hold differently now would probably shake many titles. The doctrine of *Taylor* v. *McGill* has become a rule of property.

We shall not refer especially to any of the authorities cited from other States construing similar statutes differently from the rule laid down in *Taylor* v. *McGill.* We may say, however, that we are much less concerned over a difference in the construction of statutes than we would be if the weight of authority should be found

against us on the announcement of a common-law rule.

The reason assigned in the authorities construing the statutes of other States upon this subject is that, where the legislature makes no exception to generality of an act, the courts can make none by construction.

This was the argument used in the earlier cases in this State, when the principle was struggling for recognition in equity that the statutory limitation would not run during the time when the cause of action had been fraudulently concealed. The operation of the principle was for a time stayed thereby, but it triumphed in subsequent cases. The same suggestion was made from time to time when the question arose whether a statute could operate when the courts were closed during the civil war, when no action could be brought. After the expression of some doubt upon the point in one or two cases, and the decision of these cases upon other grounds, the court finally decided that the exception did exist. *Yancy* v. *Yancy,* 5 Heisk., 353, 354, 13 Am. Rep., 5; *Peak* v. *Buck,* 3 Baxt., 71. So it has been held that, although the law requires that a widow shall dissent from her husband's will within one year after the testator's death or otherwise be bound by it and no exception is made in the statute in favor of one who has been prevented by fraud of the executor or of others interested in the estate from making her election, yet it has been held in equity that an exception exists in favor of such person. *Smart* v. *Waterhouse,* 10 Yerg., 94; *Morrow* v. *Morrow,* 3 Tenn. Ch., 532, 534. It also has been held

that, although the statute upon that subject makes no reservation in favor of persons who have been prevented by mental incompetency, yet in equity the statute would be so construed as to permit the dissent, notwithstanding the time had elapsed. *Wright* v. *West & Wright*, 2 Lea, 78, 83, 84, 85, 31 Am. Rep., 586. This court has held, and many other courts, and the doctrine is a general one, that statutes are to be construed under the rule on which this court acted in *Taylor* v. *McGill.* Indeed, it is difficult to think of a statute which may not be subjected to such construction. *Rose* v. *Wortham*, 95 Tenn., 505, 508, 509, 32 S. W., 458, 30 L. R. A., 609 et seq., and cases cited; *Maxey* v. *Powers*, 117 Tenn., 381, 403, 404, 101 S. W., 181; *Wright* v. *Cunningham*, 115 Tenn., 445, 91 S. W., 293; *Miller* v. *Wolfe*, 115 Tenn., 234, 89 S. W., 398; *Hamblen County* v. *Cain*, 115 Tenn., 279, 89 S. W., 103; *Nichols & Shepherd Co.* v. *Loyd*, 111 Tenn., 145, 76 S. W., 911; *Hardin* v. *Hassell*, 118 Tenn., 143, 100 S. W., 720, syllabus 6.

2. The next contention offered by complainant is that the cause of action was fraudulently concealed from the complainant until 1908, when her suit was brought. In response to this point it is insisted by the defendant that, even assuming that there was a fraudulent concealment, there is no case in this State which holds that this would prevent the running of the statute. In our early cases there appeared to have been considerable doubt upon this point. The rule was clearly announced in *Shelby's Heirs* v. *Shelby*, Cooke, 179,

5 Am. Dec., 686, but reserved in the later case of *Porter's Lessee* v. *Cocke*, Peck, 30, 46, but seems to have been conceded in *Reeves* v. *Dougherty*, 7 Yerg., 232, 236, 237, 238, 27 Am. Dec., 496, also in *Haywood* v. *Marsh*, 6 Yerg., 69, and in *Smart* v. *Waterhouse*, 10 Yerg., 105. It was announced in *Nicholson* v. *Lauderdale*, 3 Humph., 200; *Haynie* v. *Hall's Ex'r*, 5 Humph., 290, 292, 42 Am. Dec., 427; *McLain* v. *Ferrell*, 1 Swan, 48, 52; *Peak* v. *Buck*, 3 Baxt., 71, 72; *Vance* v. *Mottley*, 92 Tenn., 310, 21 S. W., 593; *Woodfolk* v. *Marley*, 98 Tenn., 467, 471, 40 S. W., 479, etc.

It is further insisted by the defendant that since James Boro, the agent of complainant, had full knowledge of the cause of action as early as 1890, the complainant was affected by this knowledge, and the statute began to run from that time. It is contended, however, by the complainant, that the knowledge of the agent would not affect the principal, and we are referred to the case of *Yarbrough* v. *Newell*, 10 Yerg., 376, 381, 382. The cases we have upon the subject, in addition to the one just referred to, are *Duke* v. *Harper*, 6 Yerg., 280, 284, 287, 27 Am. Dec., 462; *Union Bank* v. *Campbell*, 4 Humph., 394; *Tagg* v. *Tennessee Nat. Bank*, 9 Heisk., 479, 483, 484; *Rhat* v. *Mining Co.*, 5 Lea, 1, 63; *Bank* v. *Smith*, 110 Tenn., 337, 345, 75 S. W., 1065. These cases all announce the rule that the principal is bound by the knowledge of his agent, in the mind of the agent at the time he is acting for the principal. We are not sure whether the cases in 6 and 10

Yerger are modified by the latter cases, which state the rule in broad, general terms; but, assuming that they are not so modified, still the facts of the present case bring it within the general rule, and not within the exceptions stated in the two cases last referred to. In *Duke* v. *Harper* the duty of the agent was confined simply to the collection of rent. It was held that notice to him by the tenant that he disclaimed the title of his landlord would not be binding upon the landlord, unless actually communicated to him, because the agent had no authority to enter upon the premises, or to sue for them, upon the disclaimer. In *Yarborough* v. *Newell* it appears that Yarborough had mortgaged certain property to Newell, and that Niblett subsequently went as his agent and tendered a certain sum of money in redemption, and that Newell stated to Niblett that, while Yarborough had at one time a right to redeem, the time had expired. It did not appear that the agent informed his principal of this fact. The court held that as Niblett was Yarborough's agent only to tender the money, and, as he had no authority to sue upon failure to receive this money, the notice was not binding upon the principal. It is doubtful whether this case does not state the rule too narrowly. However, assuming that it is a correct statement, still it appears in the present case that James Boro had full authority from his sister to act for her to obtain restitution of the land in controversy. We are of the opinion that under this authority, as disclosed in the depositions of both James

Boro and the complainant, he would have had the right to sue at any time after the matter was placed in his hands. The right of action was therefore barred at all events at the expiration of seven years from the year 1890. This suit was not brought until 1908, nearly eighteen years after the suit could have been brought.

3. It is also insisted by the defendant that, every other point aside, the bill must be dismissed, because the limitation of seven years began to run in favor of Mrs. Dora R. Hidell, although she was a fraudulent grantee, from the date of the deed made to her (which was, in effect, a voluntary conveyance made by the husband to his wife, although the deed was made directly by complainant), and that the concealment of the cause of action by W. H. Hidell, the husband, would not stay the running of the statute of limitations as against the said fraudulent conveyee, the wife. That the statute of limitations protects a fraudulent vendee is clear under the authorities (*Porter's Lessee* v. *Cocke,* supra; *York* v. *Bright,* 4 Humph., 312; *Ramsey* v. *Quillen,* 5 Lea, 184; *Mull 'y* v. *Paul,* 2 Tenn. Ch., 155); and that the concealment of the cause of action by the vendor or principal will not prevent the running of the statute of limitations in favor of such fraudulent vendee is fully sustained by *Howell* v. *Thompson,* 95 Tenn., 396, 404, 32 S. W., 309, et seq.; *Bates* v. *Preble,* 151 U. S., 149, 162, 14 Sup. Ct., 277, 38 L. Ed., 106.

The question of laches is discussed by both sides in the briefs; but, as the points already determined are

fully decisive of the case, we need not go into this question.

It results that there is no error in the decree of the chancellor in dismissing the bill, and it must be sustained, with costs.