Louise **TINDLE** on behalf of Michael S. **TINDLE**, Plaintiff/Appellee,

v.

Harold **GAY**, Defendant/Appellant.

Court of Appeals of Tennessee, Western Section, at Nashville.

Sept. 2, 1994.

Application for Permission to Appeal Denied by Supreme Court Dec. 5, 1994.

Jon S. Jablonski, Nashville, for defendant/appellant.

John Camp, Camp & Camp, Sparta, for plaintiff/appellee.

FARMER, Judge.

This is an action wherein the appellee, Louise Tindle (Tindle), seeks to establish the paternity and support of her minor child, Michael S. Tindle. A petition was filed against the appellant, Harold Gay (Gay), alleging him to be the natural father. Gay has denied the allegation. At the trial of this matter, it was established that Ms. Tindle was legally married to Wiley Tindle at the time of the child's conception. The juvenile court judge for White County determined Gay the father and ordered him to begin making child support payments. Gay filed a motion to alter or amend the judgment or, in the alternative, for a new trial which was denied by the trial court. Gay now appeals and presents these issues for our consideration:

1. In a paternity action, when a child is born to a married woman, it must be alleged by the mother and proven by clear, cogent, and convincing evidence that the husband of the mother is not the father of the child.

2. The presumption of legitimacy of a child born to a mother who is married is one of the strongest presumptions in the law, and can only be overcome by clear and convincing evidence that there was no cohabitation between the husband and the wife during the period when the child in the course of nature must have been conceived. When the proof is clear and convincing that the mother and her husband continued to have sexual relations during the period when the child must have been conceived, that presumption cannot be overcome and the court cannot proceed to hear evidence or find a third party to be the father of the presumptively legitimate child.

■ As stated by this Court in *Bass v. Norman*, No. 164 (Tenn.App. Dec. 29, 1989) (WL 157884), T.C.A. § 36–2–101 et seq. sets forth a mother's right to petition the court to establish paternity and support against an alleged father, even though she is married at the time of the child's birth. She must, however, overcome the presumption of legitimacy existing in this jurisdiction. *Bass*, slip op. at 5–6, 1989 WL 157884 at *1.

There is always a presumption of the legitimacy of a child born to a mother who is married. However, it is well settled in Tennessee that such presumption of legitimacy may be overcome by clear, cogent and convincing testimony that there was no cohabitation between the husband and wife during the period when the child, in the course of nature, must have been conceived.

*Frazier v. McFerren*, 55 Tenn.App. 431, 402 S.W.2d 467, 472 (1964). *McFerren* states that it was the legislature's intent to provide for the support of all illegitimate children: both those born out of wedlock and those born to a mother who was married but whose husband was proven not to be the father. *McFerren*, 402 S.W.2d at 471.

T.C.A. § 36–2–106, which pertains to the conduct of the trial, provides that both the mother and her husband may testify to nonaccess. Ms. Tindle [1] gave the following testimony:

Q. Did you have sexual relations with him more than one time?

A. No.

Q. Were you having sexual relations with anyone else at that time?

A. No.

Q. Do you know the date that you became pregnant?

A. July the 30th of '90.

Q. And subsequently there was a child born?

A. Yes.

. . . .

Q. And what's the date of birth?

A. April 25th of '91.

Q. And is it your contention that that child is the child of Harold Gay.

A. Yes.

Further testimony was presented on cross-examination:

---

1. Mr. Tindle did not testify.

Q. In July, I think you said of 90 you were separated from your husband?

A. Yes.

Q. How long had you been separated from him?

A. For about probably a year, maybe two years.

Q. Had you been dating at that time?

A. No. The only one that I went with was him.

Q. And you just did that one time?

A. Right.

. . . .

Q. When did you all have this relationship and where was that?

A. July, when the baby . . .

. . . .

Q. So it is, outside of Mr. Gay, you didn't go with anybody then in 1990.

A. Except my husband. But we were separated . . . .

. . . .

Q. And y'all still had a relationship, didn't you?

A. Yes.

Q. So you were going with your husband at that time and having sex with him?

A. Yes.

Q. And outside of your husband and you say Mr. Gay, nobody else?

A. No.

In addition to the aforementioned testimony, the record includes the results of genetic testing performed on Ms. Tindle, Gay and the child. The results were admitted into evidence and state that "[Gay] can not be excluded as the father of Michael Tindle. The combined paternity index (genetic odds in favor of paternity) is 59,802. The relative chance of paternity is 99.99%."

On appeal, Gay contends that Tindle failed to overcome the presumption of legitimacy. Specifically, he argues that she failed to prove that Mr. Tindle was not the child's father as the court did not find, nor was it asked to find, that Wiley Tindle was not the father.

 Upon review, we find the testimony of Ms. Tindle to reveal that she had sexual relations with both Gay and her husband during the year 1990. However, she states that the child was conceived on July 30, 1990, at which time she was only having relations with Gay. We also have before us the results of the genetic testing. We hold that the record before this court, taken as a whole, includes clear, cogent and convincing evidence sufficient to rebut the presumption of legitimacy.

It results that the judgment of the trial court is affirmed. Costs are taxed to Harold Gay, for which execution may issue if necessary.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.