Herbert WYATT, et ux., Plaintiffs–
Appellees,

v.

A–BEST, COMPANY, INC.,

ACandS, Inc., et al., Defendants–
Appellants,

and

James W. KYLE, et ux., Squire Coley, et
ux., Terry Beeler, et ux., Jerome Cogs-
well, et ux., Plaintiffs–Appellees,

v.

A–BEST, COMPANY, INC.,

ACandS, Inc., et al., Defendants–
Appellants.

Supreme Court of Tennessee,
at Knoxville.

Nov. 27, 1995.

Rehearing Denied Feb. 5, 1996.

George A. Weber, III, Mike G. Nassior, Jere Franklin Ownby, III, Law Offices of Peter G. Angelos, Knoxville, for Appellees.

M. Denise Moretz, Woolf, McClane, Bright, Allen & Carpenter, Knoxville, for Appellant.

## OPINION

WHITE, Justice.

This appeal involves five products liability cases brought against ACandS, Inc., defendant-appellant, in which plaintiffs seek damages for personal injuries allegedly caused by exposure to asbestos [1] in the work-place. We granted defendant's application for permission to appeal challenging the reversal of summary judgment entered in favor of defendant on statute of limitations ground. For the reasons discussed below, we affirm the judgment of the Court of Appeals reversing summary judgment and remanding for trial.

### FACTS AND BACKGROUND

Plaintiffs, members of the Knoxville Building and Construction Trades Council or its affiliated unions, were employed in the construction trade as pipefitters, sheetmetal mechanics, and carpenters. In 1988, the Council and its affiliated unions contacted the Law Office of Peter G. Angelos to discuss the establishment, maintenance, and administration of an asbestos screening program in which union members could participate to determine whether they had sustained injuries as a result of occupational exposure to asbestos. The Council and its unions subsequently chose the law firm to establish and administer the program and to represent those union members found to be suffering from asbestos associated disease. The screening program called for participating union members to first undergo a chest x-ray. If the x-ray disclosed the possibility of an asbestos-related disease, a physician would perform a medical examination to determine if, in fact, an asbestos-related disease was present.

In May, 1989, plaintiffs Wyatt, Kyle, Coley, Beeler, and Cogswell, and hundreds of other union members, underwent chest x-rays as part of the asbestos screening program. These x-rays were sent for analysis to radiologists who were certified by the National Institute of Occupational Health and Safety in detecting chest x-ray abnormalities which indicated the possibility of occupationally-caused lung diseases.

Dr. Myung–Sup Kim was the radiologist who read plaintiffs' x-rays. According to Dr. Kim, the x-rays revealed the following:

Wyatt: Interstitial fibrosis consistent with pneumoconiosis.[2]

Kyle: Interstitial fibrosis and pleural plaques consistent with pneumoconiosis.

Coley: Interstitial fibrosis and pleural plaques consistent with pneumoconiosis.

---

1. Asbestos "is a generic term that describes a variety of naturally occurring fibrous, incombustible silicate minerals. Although tremendously valuable to industry, these minerals have been closely linked to lung cancer and asbestosis, a degenerative lung-scaring disease." *The Sloane–Dorlan Annotated Medical–Legal Dictionary* 64 (1987).

2. Pneumoconiosis is "a condition characterized by permanent deposition of substantial amounts of particulate matters in the lungs, usually of occupational or environmental origin, and by the tissue reaction to its presence." *Dorland's Illustrated Medical Dictionary* 1318 (27th ed. 1988).

Beeler: Pleural plaques consistent with pneumoconiosis. No evidence of significant interstitial fibrosis is seen.

Cogswell: Pleural plaques consistent with pneumoconiosis. No evidence of significant interstitial fibrosis is seen.

In November, 1989, the Knoxville Building and Construction Trades Council notified plaintiffs by letter of the screening results. The form letter advised plaintiffs that further testing was necessary because the x-rays showed the possibility of an asbestos-related disease. The letters stated in pertinent part:

Re: Asbestos Screening

Dear Brother/Sister:

Recently you participated in a Union sponsored Asbestos Screening Program. *We have received the reports of these x-rays and the results indicate that further testing is necessary in your case since your x-ray shows the possibility of an asbestos related disease.*

We have asked the Law Offices of Peter G. Angelos to represent our various members and we recommend that you contact attorneys from the Law Offices of Peter G. Angelos who will explain to you the steps necessary to protect you and your family's rights.

(Emphasis added). Although these letters were printed on union stationary and signed by a union representative, the letters were actually prepared and sent out by the Angelos firm for the union. The law firm then scheduled medical examinations for plaintiffs and hundreds of other union members.

As a result of a medical examination, Wyatt was advised on March 26, 1990, by Dr. Jeffrey Hecht, for the first time, that the abnormalities on his chest x-ray were caused by the exposure to asbestos and that he had contracted an asbestos related disease (asbestosis)[3]. Coley was examined on May 10, 1990, by Dr. Steve Ferguson, and diagnosed

with having asbestosis at that time. Kyle was similarly diagnosed on July 6, 1990, after being examined by Dr. Sharon Sedarat. Dr. Ferguson examined Beeler on June 21, 1990, and also found asbestosis. On August 24, 1990, Cogswell was examined by Dr. Sedarat and was diagnosed with an asbestos-related pulmonary disease.

Plaintiffs filed products liability actions against more than twenty asbestos manufacturers and distributors throughout the United States, Canada, and the United Kingdom seeking recovery for personal injury on the basis of strict tort liability, breach of implied warranties, negligence, and fraud. Wyatt, Beeler, and Coley filed their complaints on May 2, 1990. Cogswell filed his action on May 14, 1990. Kyle filed his complaint on May 25, 1990. Thus, except for Wyatt, plaintiffs filed their complaints prior to their medical examination and diagnosis.

None of the complaints initially named defendant, ACandS, Inc. However, on January 10, 1991, plaintiffs moved to amend their complaints to name ACandS, Inc., as a defendant. The motions were granted. Defendant subsequently filed motions for summary judgment asserting that the applicable statute of limitations had expired.[4] In each of these five cases, the trial judge granted the motions and dismissed the cases. The basis for the dismissals were the judges' conclusions that the statute had commenced when plaintiffs learned in November, 1989, by letter, of the abnormal x-ray results. Therefore, plaintiffs' motions to amend their complaints to name defendant as a party were made after the statute had expired.

The Court of Appeals reversed the trial courts' finding that the November, 1989, letter had merely placed on the plaintiffs a duty to exercise due diligence to discover their injuries. The court stated:

---

3. Asbestosis is "a form of lung disease (pneumoconiosis) caused by inhaling fibers of asbestos marked by interstitial fibrosis [permanent scarring] of the lung...." *Dorland's* at 153. "When asbestos fibers are deposited in the lung, the body ... produces scar tissue around the foreign matter, in an effort to wall it off. This action produces pulmonary asbestosis. A similar development in the chest cavity, outside the lung,

produces pleural thickening or pleural asbestosis, a separate form of the disease." *See Potts v. Celotex Corp.*, 796 S.W.2d 678, 679 n. 2 (Tenn. 1990).

4. The applicable statute of limitations is found in Tennessee Code Annotated Section 28-3-104 (1994 Supp.).

[I]is is clear that the plaintiffs had no knowledge of a work-related injury until they were diagnosed as suffering from probable asbestosis. The x-ray screening results ... served only to put the plaintiffs on reasonable inquiry.

We granted defendant's application for permission to appeal to decide whether plaintiffs' actions against ACandS, Inc., are time barred. The disposition of this issue entails consideration of two questions. First, we must determine what degree of certainty of a medical condition is sufficient to place a plaintiff on notice and trigger the commencement of the statute of limitations. Second, we must determine whether a tentative, preliminary diagnosis, insufficient by itself to commence the statute, activates a duty to make, with due diligence, further inquiries into the cause of a plaintiff's condition.

## DISCUSSION

■ Since these cases are before the Court on the trial courts' grant of summary judgments, our inquiry is purely a legal one. Summary judgment is appropriate only if the moving party establishes that no genuine issue as to material facts exists, thereby entitling the moving party to judgment as a matter of law. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn.1993). The applicable statute of limitations provides:

(a) The following actions shall be commenced within one (1) year after the cause of action accrued:

(1) Actions ... for injuries to the person ...;

\*   \*   \*   \*   \*   \*

(b) For the purpose of this section, *in products liability cases:*

(1) The cause of action for injury to the person shall accrue on the date of the personal injury, not the date of the negligence or the sale of a product;

(2) No person shall be deprived of the right to maintain a cause of action until one (1) year from the date of the injury; and

(3) Under no circumstances shall the cause of action be barred before the person sustains an injury.

Tenn.Code Ann. § 28–3–104 (1995 Supp.) (emphasis added).

■ Defendant argues that the statute of limitations began to run in November, 1989, when plaintiffs were notified of the abnormal x-ray results. The notice, by letter, advised plaintiffs that "the reports of these x-rays and the results indicate that further testing is necessary in your case since your x-ray shows the possibility of an asbestos related disease." The letter also advised plaintiffs to contact the Angelos law firm for advice about protecting their legal rights. Conversely, plaintiffs contend that the statute began to run only when they were examined by physicians and actually diagnosed as having asbestos related diseases in the spring and summer months of 1990.

■ A personal injury cause of action accrues when the plaintiff knows, or in the exercise of reasonable care and diligence should know, that an injury has been sustained. *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn.1975) ("We hold that in tort actions, including but not restricted to products liability actions ... the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered."); *see also Teeters v. Currey*, 518 S.W.2d 512, 515–17 (Tenn.1974). The application of this so-called "discovery rule" results in personal injury actions being filed more than one year after the injury occurs in instances in which plaintiff does not discover and reasonably could not be expected to discover that an injury was sustained during the year. *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680 (Tenn.1990). "[T]he statute [of limitations] is tolled only during the period when the plaintiff had no knowledge at all that the wrong had occurred and, as a reasonable person, was not put on inquiry." *Id.* at 680–81 (citing *Hoffman v. Hospital Affiliates, Inc.*, 652 S.W.2d 341, 344 (Tenn.1983)). Whether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a fact question for the jury to determine. *Gosnell v. Ashland Chemical, Inc.*, 674 S.W.2d 737,

739 (Tenn.App.), *perm. to appeal denied,* (Tenn.1984).

Additionally, a cause of action in tort does not accrue until a judicial remedy is available. *Potts v. Celotex Corp.,* 796 S.W.2d at 681; *Foster v. Harris,* 633 S.W.2d 304, 305 (Tenn.1982). A judicial remedy is available when (1) a breach of a legally recognized duty owed to plaintiff by defendant (2) causes plaintiff legally cognizable damage. *Potts v. Celotex Corp.,* 796 S.W.2d at 681. A breach of a legally cognizable duty occurs when plaintiff discovers or "reasonably should have discovered, (1) the occasion, the manner and means by which a breach of duty occurred that produced ... injury; and (2) the identity .of the defendant who breached the duty." *Foster v. Harris,* 633 S.W.2d at 305. Legally cognizable damages occur when plaintiff discovers "facts which would support an action for tort against the tortfeasor." *Hathaway v. Middle Tennessee Anesthesiology, P.C.,* 724 S.W.2d 355, 359 (Tenn.App.1986), *perm. to appeal denied,* (Tenn.1987). Any other interpretation would be anomalous as it would require "plaintiff [to] file suit prior to knowledge of ... injury or [require a suit] to vindicate a non-existent wrong, at a time when injury is unknown and unknowable." *Teeters v. Currey,* 518 S.W.2d at 515; *see also McCroskey v. Bryant Air Conditioning,* 524 S.W.2d at 493 ("We cannot assume that the Legislature would adopt a statute which would deny redress to a citizen by requiring that he sue prior to knowledge of his injury.").

As one court aptly put it:

Except in topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of legal "axiom," that a statute of limitations does not begin to run against a cause of action before that cause of action exists, i.e., before a judicial remedy is available to the plaintiff.

*Dincher v. Marlin Firearms Co.,* 198 F.2d 821, 823 (2d Cir.1952) (Frank, J., dissenting) (footnotes omitted) (quoted in *McCroskey v. Bryant Air Conditioning Co.,* 524 S.W.2d at 489). Quite simply, a plaintiff must have discovered the existence of facts which would support an action in tort against the tortfeasor before suit can be filed.[5] "Such facts include not only the existence of an injury, but the tortious origin of the injury." *Hathaway v. Middle Tennessee Anesthesiology, P.C.,* 724 S.W.2d at 359.

While a prerequisite to the running of the statute of limitations is plaintiff's reasonable knowledge of the injury, its cause and origin, a plaintiff is not entitled to delay filing until all injurious effects or consequences of the actionable wrong are actually known. *See Chambers v. Dillow,* 713 S.W.2d 896, 898 (Tenn.1986); *Security Bank & Trust Co. v. Fabricating, Inc.,* 673 S.W.2d 860, 864–65 (Tenn.1983); *Taylor v. Clayton Mobile Homes, Inc.,* 516 S.W.2d 72, 74–75 (Tenn. 1974); *Bennett v. Hardison,* 746 S.W.2d 713, 714 (Tenn.App.1987), *perm. to appeal denied,* (Tenn.1988); *National Mortg. Co. v. Washington,* 744 S.W.2d 574, 579 (Tenn.App.), *perm to appeal denied,* (Tenn.1987).

Allowing such a delay would conflict with the purpose of avoiding uncertainties and burdens inherent in pursuing and defending stale claims. *Teeters v. Currey,* 518 S.W.2d at 515; *Spence v. Miles Laboratories, Inc.,* 810 F.Supp. 952, 963 (E.D.Tenn.1992) (statutes of limitations and repose represent "public policy which affords plaintiffs what the legislature deems to be a reasonable time to present their claims; and it protects defendant and the courts from having to deal with stale cases where the search for the truth and justice may be seriously impeded by the death or disappearance of witnesses, fading memories, disappearance of documents or other loss of material evidence").

In a case similar to the present one, *Trieschock v. Owens Corning Fiberglas Co. Inc.,* 354 Pa.Super. 263, 511 A.2d 863 (1986), plaintiff worked as a pipefitter, during which time

---

5. Indeed, the creation of the discovery doctrine was necessary "to alleviate the intolerable result of barring a cause of action by holding that it 'accrued' before the discovery of the injury or the wrong." *Foster v. Harris,* 633 S.W.2d. at 305.

he was exposed to asbestos. After undergoing a medical screening, a physician telephoned plaintiff, informed him that he "suspected" that plaintiff had asbestosis, and scheduled plaintiff to see a pulmonary specialist. *Id.* 511 A.2d at 864. The specialist definitively diagnosed plaintiff and informed him that he had asbestosis. Defendant claimed that the statute of limitations began when the doctor told plaintiff he "suspected" asbestosis and consequently, the case was barred.

The court disagreed.

A plaintiff in a creeping disease case [6] should not be required to have greater knowledge than ... physicians about [the] medical condition. If those physicians are not reasonably certain as to [the] diagnosis, then [plaintiff] certainly cannot be bound to have the knowledge necessary to start the statute of limitations running. The information conveyed to [plaintiff that the physician suspected asbestosis] ... was insufficiently certain to start the period.

*Id.* at 866; *but see Ackler v. Raymark Industries, Inc.,* 380 Pa.Super. 183, 551 A.2d 291, 296–97 n. 3 (1988) (qualified *Trieschock* by noting that "[s]o long as the claimant is aware that he has an injury there is no requirement that [claimant] be aware of a precise diagnosis as some language [in *Trieschock* ] seems to suggest").

Therefore, although the tentative diagnosis did not commence the running of the statute, it did trigger a duty on plaintiff's part to determine, with due diligence, whether he did, in fact, have that disease. *Id.* This duty is consistent with the purposes served by the statute of limitations. *Id; see also Nelson v. Industrial Commission,* 120 Ariz. 278, 585 P.2d 887 (1978) (an asbestos worker tentatively diagnosed with lung cancer should not be held to a higher standard than physicians treating the worker in discovering the relationship of the condition to the employment).

The reasoning of the Pennsylvania courts is persuasive and consistent with our discovery rule. *See e.g., Potts v. Celotex Corp.,* 796 S.W.2d 678 (Tenn.1990) (action for asbestos-related disease did not accrue until cause of disease was diagnosed or reasonably could have been diagnosed). Parallel to the "suspected" diagnosis in the *Trieschock* case is the November 1989 letter revealing "the possibility of an asbestosis related disease" in this case. Although that information triggered a duty on the plaintiffs' parts to determine, with due diligence, whether they, in fact, had an asbestos-related disease, it did not commence the running of the statute of limitations.

Our conclusion is bolstered by the uncontroverted medical testimony in this case. Dr. Dominic J. Gaziano, a board certified pulmonologist, in his affidavit,[7] stated "[t]hat an x-ray in and of itself cannot constitute a diagnosis with regard to asbestos lung disease without an occupational history and physical examination.... For purposes of asbestos lung disease an x-ray may distinguish those persons who need to be further evaluated to determine whether or not the individual has sustained an injury."

Thus, we cannot conclude, as a matter of law, that plaintiffs' causes of action are barred by the applicable statute of limitations. Although plaintiffs were certainly put on notice that something was amiss when they received the letters advising further testing after the x-ray abnormalities, they did not know, and reasonably could not have known, that they had sustained an actionable injury until they received the results of the follow-up testing. They were diligent in pursing that testing. They filed their suits within one year of learning their results. Summary judgment was, therefore, inappropriate.

◼ We hold that the statute of limitations on a tort action commences when plaintiff

---

6. A creeping disease case is one, such as asbestosis, that develops slowly and progressively after exposure to the causal agent.

7. We disagree with defendant's contention that Dr. Gaziano's affidavit should not be considered. The affidavit was filed prior to the trial court's

grant of summary judgment in Coley's case, was filed with motions to reconsider in the other four cases, and was considered by the trial courts in rulings upon the motions to reconsider the grants of summary judgment.

knew or in the exercise of reasonable diligence, should have known, that an actionable injury has occurred. An actionable injury is one caused by the breach of a legally recognized duty *and* one that results in legally cognizable damage. Knowledge that an actionable injury has occurred does not require absolute knowledge of the particulars of the injury. Medical certainty to diagnose and treat and legal certainty to file a lawsuit are vastly different. While the plaintiff must know the general causes and results of the tort, the physician must know the specifics in order to rendered adequate treatment. Here, however, plaintiffs did not know the general cause and results of the tort until the asbestosis diagnoses were made. Accordingly, we affirm the reversal of the summary judgments and the remands for trial.

ANDERSON, C.J., and DROWOTA, REID and BIRCH, JJ., concur.