IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

FILED

November 16, 1998

Cecil W. Crowson
Appellate Court Clerk

FOR PUBLICATION

Filed: November 16, 1998

| | | |
|---|---|---|
| MICHELLE CREIGHTON TERRY, | ) | |
| | ) | |
| Appellee, | ) | DAVIDSON CIRCUIT |
| | ) | |
| | ) | |
| Vs. | ) | |
| | ) | HON. HAMILTON V. GAYDEN, JR., |
| | ) | JUDGE |
| GARY D. NIBLACK, M.D. and | ) | |
| LABORATORY INVESTMENTS, | ) | |
| INC., D/B/A GENE PROOF | ) | |
| TECHNOLOGIES, | ) | |
| | ) | No. 01-S-01-9709-CV-00180 |
| Appellants. | ) | |

For Appellants:

Michael M. Castellarin
MOODY, WHITFIELD &
  CASTELLARIN
Nashville, Tennessee

For Appellee:

Carol L. Soloman
L. R. DeMarco
Nashville, Tennessee

# O P I N I O N

COURT OF APPEALS AFFIRMED                    ANDERSON, C.J.

We granted this appeal to determine when the one-year statute of limitations[1] commenced for the plaintiff to file her suit alleging that the defendants negligently performed an inaccurate paternity blood test, which excluded from paternity the natural father of her child. The trial court dismissed the suit because it was not filed within one year of when the plaintiff learned the results of the blood test. The Court of Appeals reversed, concluding that the statute did not commence until the date the plaintiff learned the results of a second blood test that differed from the first blood test.

After our review of the record and applicable authority, we agree that the plaintiff could not reasonably have discovered the existence of a legal cause of action until she learned the results of the second blood test. Because the suit was filed within one year of the date the cause of action accrued, we therefore affirm the Court of Appeals' judgment that the suit was filed within the statute of limitations.

## BACKGROUND

On February 9, 1994, the plaintiff, Michelle Creighton Terry, filed a petition with the Davidson County Juvenile Court alleging that James Michael Hayner was the father of her child. The petition asserted:

> Petitioner and Respondent engaged in sexual intercourse;
> however, they were not married. Petitioner would further
> state that Respondent is the only person with whom she had
> sexual relations with prior to, during and after the conception
> of the minor child. Petitioner would state that she and
> Respondent had sexual intercourse during her fertile period
> and Respondent is the father of the unborn child, who is a
> baby girl. The unborn child was conceived in May or June,
> 1993, and is due to be born in mid-February, 1994.

A blood test was performed by the defendants, Dr. Gary Niblack and Laboratory Investments, Inc., d/b/a Gene Proof Technologies, and a report was made on May 6, 1994. The blood test results excluded Hayner as the father.

---

[1] Tenn. Code Ann. § 29-26-116 (1980).

The plaintiff moved, and the juvenile court ordered, that a second blood test be performed by an independent laboratory. The results of this test were reported on June 6, 1995, and revealed a 99.5 percent probability that Hayner was the father. The juvenile court held a hearing on October 11, 1995, to determine which of the two tests was correct. After hearing the defendants' employee testify that an error was made in the original test and that the defendants had concealed the error, the juvenile court found that the second test was correct and that Hayner was the father.

On April 2, 1996, the plaintiff filed this complaint alleging that the defendants were negligent in conducting the erroneous blood test. The defendants moved to dismiss the suit on the grounds that it was not filed within one year of May 6, 1994, i.e., the date the plaintiff learned the results of the first blood test. The defendants argued that the plaintiff should have known that the first test was erroneous for two reasons: first, the plaintiff had alleged in her petition to establish paternity that she had only had sexual relations with Hayner; and second, the plaintiff had alleged in her motion to conduct a second blood test that defendant Niblack had told her attorney that "there had been a problem" with the initial test. The trial court dismissed the plaintiff's suit.

On appeal, the Court of Appeals, treating the trial court's ruling as a grant of a summary judgment,[2] concluded that a genuine and material issue existed with regard to the plaintiff's discovery of the legal action and that the suit had been filed within the statute of limitations. The appellate court stated that the plaintiff's assertions regarding her sexual history with Hayner and the conception of the child did not constitute notice of a false blood test "absent expert evidence of the relevant physical and natural rules and evidence that such rules are matters of public knowledge." The appellate court further stated that notice of a "problem" with the blood test was not sufficient to inform the plaintiff that the result was erroneous. Thus, the appellate court concluded that "the

---

[2] The defendant's motion was predicated on Tenn. R. Civ. P. 12.02 and 56.02. The trial court's order of dismissal did not specifically state which rule the dismissal was based upon. The Court of Appeals determined that because the motion was accompanied with evidentiary materials and affidavits, it was properly treated as a summary judgment pursuant to Tenn. R. Civ. P. 56.02.

first record of effective notice of a false test result was the admission in the [plaintiff's] complaint that the result of the second test was reported on June 6, 1995, which was less than one year prior to the filing of the present suit."

We granted the defendants' application for permission to appeal.

## ANALYSIS

We begin our analysis by summarizing the standards applicable to summary judgment. A summary judgment is appropriate only if the moving party shows that no genuine and material factual issue exists and he or she is entitled to relief as a matter of law. In ruling on the motion, the court must consider the evidence in a light most favorable to the non-moving party and must allow all reasonable inferences in his or her favor. A summary judgment may be proper, therefore, only "when there is no dispute over the evidence establishing the facts that control the application of a rule of law." Byrd v. Hall, 847 S.W.2d 208, 214-15 (Tenn. 1993); see Tenn. R. Civ. P. 56.

The parties recognize that the one-year statute of limitations begins to run when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, the existence of a legal cause of action. Teeters v. Currey, 518 S.W.2d 512, 517 (Tenn. 1974) (adopting "discovery rule"); see Hoffman v. Hospital Affiliates, Inc., 652 S.W.2d 341, 342-43 (Tenn. 1983) (following Teeters). This so-called "discovery rule" prevents the anomaly of requiring that a plaintiff file suit "prior to knowledge of his injury or . . . that he sue to vindicate a non-existent wrong, at a time when injury is unknown and unknowable." Teeters, 518 S.W.2d at 515. As we have explained:

> [A] cause of action in tort does not accrue until a judicial remedy is available. A judicial remedy is available when (1) a breach of a legally recognized duty owed to plaintiff by defendant (2) causes plaintiff legally cognizable damage. A breach of a legally cognizable duty occurs when plaintiff discovers or 'reasonably should have discovered, (1) the occasion, the manner and means by which a breach of duty

-4-

occurred that produced . . . injury; and (2) the identity of the defendant who breached the duty.'

Wyatt v. A-Best, Co., 910 S.W.2d 851, 855 (Tenn. 1995) (citations omitted).

We further stated in Carvell v. Bottoms, 900 S.W.2d 23 (Tenn. 1995):

> It is not required that the plaintiff actually know that the injury constitutes a breach of the appropriate legal standard in order to discover that he has a right of action; the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct.

Id. at 29 (quoting Roe v. Jefferson, 875 S.W.2d 653, 657 (Tenn. 1994)).

The parties in this case dispute when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, that the defendants negligently performed the erroneous blood test. The defendants contend that the statute of limitations began to run on May 6, 1994, because the plaintiff should reasonably have discovered the cause of action upon learning the results of the first blood test. The plaintiff argues that the statute did not run until October 11, 1995, the date the juvenile court determined that the second test was correct.

Like the Court of Appeals, we conclude that the statute of limitations did not commence when the results of the first blood test were reported. Although the plaintiff certainly had knowledge as to the conception of the child and her sexual relations with Hayner, such knowledge was not sufficient notice that the first blood test was negligently performed so that a cause of action existed. Miller v. Niblack, 942 S.W.2d 533, 540 (Tenn. App. 1996) (rejecting similar contention). Moreover, such knowledge was not sufficient notice for the plaintiff to have reasonably discovered that the defendants negligently performed the first blood test and that a legal cause of action existed. See Wyatt, 910 S.W.2d at 855 (stating that "legally cognizable damages occur

when plaintiff discovers facts which would support an action for tort against the tortfeasor") (citation omitted).[3]

Similarly, we disagree with the defendants' contention that the plaintiff should reasonably have discovered the cause of action when her attorney was allegedly told by Dr. Niblack that there had been a "problem" with the first blood test. As the Court of Appeals concluded, this information did not reflect on the accuracy or inaccuracy of the blood test, or whether the defendants had been negligent in performing the test. It may have been, and in fact was, sufficient to require the plaintiff to use due diligence to discover whether there had been an error and also whether facts existed to support a legal cause of action. See, e.g., Wyatt, 910 S.W.2d at 856 ("although the tentative diagnosis did not commence the running of the statute, it did trigger a duty on plaintiff's part to determine, with due diligence, whether he did, in fact, have that disease"). Yet, as the intermediate court said, it did not begin the running of the statute of limitations.

Accordingly, we conclude that the statute of limitations did not begin to run on the day the plaintiff learned of the first blood test. Although the plaintiff contends that the statute did not commence until her actual discovery that the first blood test was erroneous, i.e., when the juvenile court determined the second test was correct on October 11, 1995, we agree with the Court of Appeals' determination that the plaintiff should reasonably have discovered the existence of this cause of action on June 6, 1995, the date she learned the results of the second blood test that there was a 99.5 percent probability that Hayner was the father. In either case, the outcome is the same because the suit was filed on April 2, 1996, which was within one year of either date.

---

[3] Although we share the Court of Appeals' conclusion in this regard, we disagree with its statement that the plaintiff's knowledge of the date of conception and her sexual history with the father of the child required expert testimony as to the relevant "natural and physical rules." In our view, such a requirement would be inconsistent given that lay testimony regarding the timing of conception is generally admissible in a paternity suit. See, e.g., Tindle v. Gay, 891 S.W.2d 617 (Tenn. App. 1994); Rooker v. Rimer, 776 S.W.2d 124 (Tenn. App. 1989), cert. denied 493 U.S. 1073, 110 S. Ct. 1120, 107 L. Ed. 2d 1027 (1990).

## CONCLUSION

After reviewing the record and authority, we agree with the Court of Appeals that the plaintiff did not know, nor reasonably could have discovered in the exercise of due diligence, the existence of a legal cause of action until the results of the second blood test were reported. Accordingly, we affirm the Court of Appeals' judgment that the plaintiff's suit was not barred by the statute of limitations, and the case is remanded to the trial court for further proceedings. Costs of appeal are taxed to the defendants.

_____
RILEY ANDERSON, CHIEF JUSTICE

**CONCUR:**

Drowota, Birch, and Holder, JJ.

Reid, not participating