**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0415n.06**
**Filed: June 20, 2006**

**No. 05-5176**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| MARTHA GILMORE, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) On Appeal from the United States |
| | ) District Court for the Middle |
| | ) District of Tennessee |
| STEPHEN ALLEN DAVIS AND | ) |
| AL GALLICO, | ) |
| | ) |
| Defendants-Appellees. | ) |
| | ) |
| | ) |

**BEFORE:    BOGGS, Chief Judge; BATCHELDER, Circuit Judge; and WEBER, District Judge.**[*]

PER CURIAM.  Martha Gilmore appeals the district court's grant of summary

judgment dismissing her various state-law tort claims against Stephen Allen Davis and Al

Gallico.  The district court, applying Tennessee law, held that Gilmore's claims were time-barred

under the applicable statutes of limitations, which began to run when Gilmore acquired

knowledge of the factual predicate of her claims thirty years ago.  We hold that summary

---

[*]The Honorable Herman J. Weber, United States Judge for the Southern District of Ohio, sitting by designation.

judgment in this case was improper because the evidence regarding when Gilmore's cause of action accrued under Tennessee's discovery rule presents a genuine issue of material fact.

**I**

This case involves a controversy more than thirty years in the making. Due to the procedural disposition of the case, we view the facts in the light most favorable to Gilmore. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Gilmore and Davis were married in 1969, two years into their relationship. They had a child, Stephanie, that same year. In 1970, they separated, but did not divorce. Their marriage was troubled by Davis's use of drugs. Despite the drugs, Davis was and is, by all accounts, a brilliant songwriter who has written more than four hundred commercially released songs. Three have been performed over one million times, winning "Million Performance" awards from Broadcast Music, Inc.

Prior to his marriage to Gilmore, Davis and Norro Wilson co-wrote a song entitled MAMA McCLUSKIE. Al Gallico Music Corp. (AGMC), run by Gallico, published the song. Gallico was a force in the publishing industry, who could turn a talented songwriter into a recording star. Davis and Wilson entered into a standard, single-song, publishing agreement with AGMC. AGMC would get half the revenue and both authors would share the rest. By 1974, Wilson had co-written THE MOST BEAUTIFUL GIRL and entered into another standard publishing agreement with AGMC. THE MOST BEAUTIFUL GIRL was subsequently recorded by Charlie Rich. That recording became #1 on the Billboard Country Chart and received a BMI Million Performance Award. The song was also recorded by many other artists.

Gilmore v. Davis (No. 05-5176)

Davis filed a petition for divorce from Gilmore in June 1974. Gilmore filed a counterclaim asking for a temporary injunction restraining Davis from transferring or encumbering any of his property. Gallico and Davis were both served notice of Gilmore's counterclaim.

During the divorce, Gilmore heard THE MOST BEAUTIFUL GIRL on the radio and it made her heart "skip a beat." She felt that it was a song written by Davis. Noting similarities between THE MOST BEAUTIFUL GIRL and MAMA McCLUSKIE, Gilmore instructed her attorney, Larimore Burton, to investigate whether the song might be part of the marital estate.

On June 19, 1974, Burton met with Gallico on Gilmore's behalf, ostensibly to inquire whether Davis was the writer of THE MOST BEAUTIFUL GIRL. Davis was summoned to the AGMC offices on the same day. He arrived in time to see Gallico and Burton shake hands before Burton left. Davis couldn't imagine what his wife's divorce attorney was doing there. Then Davis was called in to Gallico's office. Gallico told Davis, "THE MOST BEAUTIFUL GIRL is an infringement of MAMA McCLUSKIE" and "I'll take care of you," before handing him a pre-prepared release to sign. The release disclaims any infringement between the two songs and explicitly protects Gallico from any claims. In consideration for the release, Gallico promises his continued efforts as publisher on behalf of Davis's other songs.

After the meeting, Burton reported back to Gilmore. He told her that he had spoken to Gallico and that Davis had no part in writing THE MOST BEAUTIFUL GIRL. Furthermore, Burton related that Gallico thought that Davis would not be a successful songwriter. Contrary to this assertion, a few months later, at the time of the final divorce decree, Burton was in

possession of a royalty statement showing that Davis was earning royalties on *three* songs by *1970*. One of these, TAKE TIME TO KNOW HER, would go on to sell over two million copies for the recording artist Percy Sledge.

In her final divorce settlement, Gilmore received exclusive custody of Stephanie, no alimony, $150 per month child support, a color television, $750 as reimbursement for a hospital bill, and $300 attorney's fees. In addition, Davis was to provide money for Stephanie's college education and medical insurance if his future income allowed for it. Notably, there was no provision for a percentage of Davis's royalties, a term that had previously been a part of the negotiations. The divorce became final in December 1974.

Much later, in 1986, AGMC and Algee Music Corp., another Gallico vehicle, were sold to Columbia Pictures and subsequently to EMI Music. In connection with the purchase, EMI released a sound recording entitled AL GALLICO HISTORY IN MUSIC, on which Gallico is interviewed regarding the history of his published music. During the interview, Gallico admits that THE MOST BEAUTIFUL GIRL is a rewrite of MAMA McCLUSKIE. In 1994 or 1995, Gallico mailed Davis a copy of the interview on cassette tape. Davis did not listen to the tape until December 2000, when he discovered that he had a cause of action against Gallico.

On May 6, 2002, Davis filed suit in the Middle District of Tennessee alleging that Gallico and AGMC had defrauded him. In April or May of 2003, Gallico's attorneys contacted Burton, who called Gilmore and informed her of Davis's lawsuit. Gilmore then called Davis on the telephone, their first conversation since 1996. During this conversation, Davis admitted defrauding her in 1974 to "keep [her] from getting anything out of the divorce." Davis also

revealed that he was one of the writers of THE MOST BEAUTIFUL GIRL. Davis's tone was "confessional." On November 24, 2003, the district court held that all of Davis's claims against Gallico were barred by the applicable Tennessee statute of limitations and dismissed the suit. *Davis v. Gallico*, No. 02-0443, slip op. at 6 (M.D. Tenn. 2003).

On December 15, 2003, Gilmore filed this suit against Davis and Gallico, alleging three counts based on state-law torts: fraudulent transfer pursuant to Tenn. Code Ann. § 66-3-301 and the common law, "fraudulent misrepresentation," and conversion. On July 9, 2004, Gallico filed his answer, asserting the statute of limitations as an affirmative defense. Depositions were taken from Gilmore and Burton. Davis and Gallico filed declarations. On October 13, 2004, Gallico moved for summary judgment, citing the statute of limitations. On November 23, 2004, the court granted Gallico's motion for summary judgment, holding that Gilmore was on notice of the similarities between the songs in 1974 and that the current action came too late. *Gilmore v. Davis*, No. 03-1195, slip op. at 3–4 (M.D. Tenn. 2003). Following Gallico's lead, Davis filed a motion for summary judgment, also relying on the statute of limitations. The court granted the motion and ordered the case dismissed. *Gilmore v. Davis*, No. 03-1195, slip op. at 1 (M.D. Tenn. Jan. 11, 2005). On January 18, 2005, Gilmore filed her notice of appeal.

**II**

We review a grant of summary judgment de novo. *Williams v. Ford Motor Co.*, 187 F.3d 533, 537–38 (6th Cir. 1999). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a grant of summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. The party opposing summary judgment cannot rest on its pleading or allegations; to prevail, she must present material evidence in support of her allegations. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In this case, jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). Accordingly, we apply state law as decided by the Tennessee Supreme Court. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). *See also State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005). If the state supreme court has not yet addressed the issue presented, we must predict how it would rule, by looking to "all relevant data," including state appellate decisions. *Kingsley Associates, Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995) (citing *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir.1985)); *see also Owens Corning v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 257 F.3d 484, 491 (6th Cir. 2001).

### III

The purpose of a statute of limitations "is to ensure fairness by preventing undue delay in bringing suit after a cause of action has accrued." *Pac. E. Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 955 (Tenn. Ct. App. 1995); *see also Hackworth v. Ralston Purina Co.*, 381 S.W.2d 292, 294 (Tenn. 1964) (purpose is to compel the exercise of a right of action within a reasonable

time and prevent undue delay in bringing suits to avoid having the facts become obscure from the lapse of time, the defective memory or death or absence of witnesses).  However, to serve justice, delay may sometimes be unavoidable.  In cases where "'facts about causation [are] in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain,'" the cause of action does not accrue and the statute of limitations cannot run.  *Craft v. Vanderbilt Univ.*, 18 F. Supp. 2d 786, 796 (M.D. Tenn. 1998) (brackets in original); *see also Hill v. A.O. Smith Corp.*, 801 F.2d 217, 224 (6th Cir. 1986).

The point at which, under Tennessee law, a cause of action accrued and the limitations period began to run varied greatly in Tennessee during the 1960s and 70s.  Around the nation, during the 1960s, tort jurisprudence was undergoing significant change.

> Adopted in 1965, Section 402A [in the Restatement of Torts] ambitiously codified and gave legitimacy to a growing body of products liability law, providing that if a product was defective, and the defect caused harm, liability would be imposed upon the manufacturers and distributors, whether or not they were at fault and whether or not they were in privity with the plaintiff.  While such actions were relatively rare prior to Section 402A, its adoption "shook American courts out of their doldrums and invited them to re-examine many premises that stood as impediments to recovery."

Dustin R. Marlowe, Note, *A Dose of Reality for Section 6(c) of the Restatement (Third) of Torts: Products Liability*, 39 Ga. L. Rev. 1445, 1450–51 (2005).  Perhaps in reaction to these developments, the Tennessee Supreme Court decided *Jackson v. General Motors Corp.*, 441 S.W.2d 482 (Tenn. 1969).  In *Jackson*, the court held that in a products liability action, the statute of limitations begins to run at the time of sale.  *Id.* at 482–83.  To soften the blow of what was assuredly a harsh rule for plaintiffs, the court noted that "[w]hile hardships may arise in particular cases by reason of this ruling, a contrary ruling would be inimical to the repose of

society and promote litigation of a character too uncertain and too speculative to be encouraged." *Id.* at 483 (quoting *Albert v. Sherman*, 67 S.W.2d 140, 142 (Tenn. 1934)).

The Tennessee Legislature acted quickly to undermine *Jackson* and amended the statute controlling products liability to state that the cause of action "shall accrue on the date of the personal injury not the date of the negligence or the sale of a product." Tenn. Code Ann. § 28-304 (1969) (effective May 20, 1969). Regarding the retroactive application of the statute, the Legislature codified that the "act shall not apply to causes of action accruing prior to the effective date of this act." *Ibid.* In *Flynn v. Camp*, 470 S.W.2d 347, 348 (Tenn. 1971), the product at issue, chemicals with allegedly defective packaging, were sold on April 16, 1969. The Tennessee Supreme Court held that the cause of action accrued on the date of sale and prior to the amendment. *Id.* at 348. The complaint was not filed until June 3, 1970, too late under the one-year statute of limitations. *Id.* at 347.

In response, the Legislature amended the statute in 1972, deleting the language limiting its application to causes of action accruing before the effective date and adding that "no person shall be deprived of his right to maintain his cause of action until one (1) year from the date of his injury and under no circumstances shall his cause of action be barred before he sustains an injury." Tenn. Code Ann § 28-304 (1972). Again the court responded, and held that the statute could not be applied retrospectively because retroactive application revived otherwise barred causes of action in contravention of the Constitution of Tennessee. *See Ford Motor Co. v. Moulton*, 511 S.W.2d 690, 695 (Tenn. 1974).

This confrontation was finally settled in *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487 (Tenn. 1975). There, the court noted that a cause of action accrues only when "the force wrongfully put in motion produces [] injury," and the injury is known or knowable. *Id.* at 490. The court announced what has become known as the discovery rule:

> [I]n tort actions, including but not restricted to products liability actions ('conceived in an illicit intercourse of tort and contract') predicated on negligence, strict liability or misrepresentation, the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or *when in the exercise of reasonable care and diligence, it should have been discovered*. All cases contra are overruled.

*Id.* at 490–91 (emphasis added). *See also Sutton v. Barnes*, 78 S.W.3d 908, 912–13 (Tenn. Ct. App. 2002); *Wyatt v. A-Best, Co.*, 910 S.W.2d 851, 855 (Tenn. 1995).

"'[R]eason, logic and fundamental fairness'" are the concepts that underlie the discovery rule. *Potts v. Celotex Corp.*, 796 S.W.2d 678, 681 (Tenn. 1990) (quoting *McCroskey*, 524 S.W.2d at 489). "[T]he rule responds to the unfairness of requiring a plaintiff to file suit prior to his knowledge of an injury, 'requiring that he sue to vindicate a non-existent wrong, at a time when injury is unknown and unknowable.'" *Potts*, 796 S.W.2d at 681. "[A] cause of action in tort does not exist until a judicial remedy is available to the plaintiff." *Ibid.* There is no judicial remedy available to a plaintiff until she has "discovered, or reasonably should have discovered, (1) the occasion, the manner and means by which a breach of duty occurred that produced his injury; and (2) the identity of the defendant who breached the duty." *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982); *see also Taylor v. City of Chattanooga*, No. E2004-00701-COA-R3-CV, 2005 WL 74103, at *2 (Tenn. Ct. App. Jan 13, 2005); *Craft*, 18 F. Supp. 2d at 796.

The discovery rule applies only in cases where the plaintiff does not discover and reasonably could not be expected to discover that he had a right of action. Furthermore, the statute is tolled only during the period when the plaintiff had no knowledge at all that the wrong had occurred and, as a reasonable person, was not put on inquiry.

*Hoffman v. Hosp. Affiliates, Inc.*, 652 S.W.2d 341, 344 (Tenn. 1983). "Once the suspicion of wrongdoing has arisen, the limitations period runs, and the plaintiff is under a duty to investigate with reasonable diligence." *Ergon, Inc. v. Amoco Oil Co.*, 966 F. Supp. 577, 582 (W.D. Tenn. 1997); *see also Terry v. Niblack*, 979 S.W.2d 583, 586 (Tenn. 1998). A plaintiff need not know the exact legal standards in order to know that she has sustained an injury. *Ibid.* Finally, once the injury is detected, the plaintiff cannot wait until all of its effects are known, that is, "until he knows all of the injurious effects as consequences of an actionable wrong." *Security Bank & Trust Co. of Ponca City, Okl. v. Fabricating, Inc.*, 673 S.W.2d 860, 864–65 (Tenn. 1983).

It is clear that the discovery rule applies to the multiple tort actions in this case. Arguing to the contrary, Gallico and Davis can marshal only outdated and overruled case law. *See, e.g., Ford Motor Co. v. Moulton*, 511 S.W.2d 690, 695 (Tenn. 1974) (barred cause of action cannot be revived); *Louis Dreyfus Corp. v. Butler*, 496 F.2d 806 (6th Cir. 1974); *Hallack v. Hawkins*, 409 F.2d 627, 630 (6th Cir. 1969) (The statute of limitations commences to run when the interest in property is transferred.); *German Bank v. Haller*, 52 S.W. 807 (Tenn. 1898) (statute of limitations runs from the date of the fraudulent transfer); *Howell v. Thompson*, 32 S.W. 309 (Tenn. 1895) (same). To the extent that the appellees argue for the application of a specific statute of limitations, those arguments are premature. *See, e.g.*, Br. of Appellees at 35 (presenting, variously, four-, six-, and ten-year limitations periods). We do not decide in this

appeal whether Gilmore has made a prima facie case for each of her claims or, for that matter, what type of tort or contract claims are alleged in her complaint. Nor do we decide anything about copyright or Tennessee community property law. We hold only that the district court, in light of the evidence, improperly applied the discovery rule to dismiss the complaint as a matter of law.

The appellees argue that under the discovery rule, the statute began to run when Gilmore had actual knowledge of her claim, which they place in 1974. The argument continues that because she noted a similarity between the two songs, felt that Davis could have written it, and instructed her attorney to investigate the matter further, she "admits knowledge of her claims in 1974." According to the appellees, "it is difficult to understand how possessing enough knowledge to direct your attorney to investigate could not be reasonable notice of the claim she now asserts."

To the contrary, we believe that this is not a difficult concept to understand. The appellees are confused because they conflate *facts* with *claims* under the discovery rule. For example, a plaintiff can have full knowledge of the *fact* that she purchased securities from a defendant and not know of her *claim* for fraud until years later. *See City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 738 (Tenn. Ct. App. 1996); *see also Hamblen v. Davidson*, 50 S.W.3d 433, 438 (Tenn. Ct. App. 2000) (knowledge of injury is not knowledge of claim). Here, as a primary matter, Gilmore's association with the appellees and her simultaneous knowledge of the possible similarity between two songs does not, as a matter of law, put her on notice of her claims against them.

Second, although the facts clearly demonstrate that Gilmore knew of the possible similarities between the two songs and directed her attorney to investigate, those facts do not prove as a matter of law that she discovered her claims. The discovery rule instructs that a cause of action accrues not because of knowledge of facts, but because of knowledge of the elements that make a lawsuit possible. Gilmore must have discovered her claim, not merely the facts surrounding it—chiefly, the manner and means of the breach and the identities of the defendants.

Taken in the light most favorable to Gilmore, the facts raise a genuine issue of material fact as to whether a cause of action had accrued. Gilmore, although knowing that there was a possible similarity between the two songs, was ignorant of how she had been wronged and by whom. A jury could reasonably find that Gilmore's actions in 1974, *viz.,* instructing Burton to investigate the provenance of THE MOST BEAUTIFUL GIRL, were entirely reasonable. Burton's assurances could have led Gilmore rationally to remain ignorant that a wrong had occurred, of who had wronged her, and of the manner in which she had been wronged. In one analogous situation, the Tennessee Court of Appeals has held that the assurances of a doctor can delay the accrual of a cause of action. *See McClellan v. Stanley*, 978 S.W.2d 943 (Tenn. Ct. App. 1998) (in medical malpractice case, mistaken assurances of doctor delay accrual of cause of action and tolls running of statute of limitations). We think that, as in *McClellan v. Stanley*, Gilmore is "entitled to have the trier of fact resolve" whether her reliance on Burton's assurances was reasonable. *Id.* at 945

The evidence in this case creates a genuine issue of material fact regarding the reasonableness of Gilmore's behavior. "It is well-established that the discovery rule ordinarily

raises issues of fact as to whether a plaintiff should have known of a claim for relief, and whether a plaintiff exercised 'reasonable diligence,' prohibiting resolution of the issue on either a motion to dismiss or motion for summary judgment." *Craft*, 18 F. Supp. 2d at 796. *See also Sutton v. Barnes*, 78 S.W.3d 908, 912–13 (Tenn. Ct. App. 2002) (exercise of reasonable care in discovering the injury is generally a question for the trier of fact); *Orlando Residence, Ltd. v. Nashville Lodging Co.*, 104 S.W.3d 848, 854 (Tenn. Ct. App. 2002) (it is for the jury to draw inferences from the uncontroverted facts as to what the plaintiff knew or should have known and whether due diligence was exercised—the issue is not appropriate for summary judgment); *Hathaway v. Middle Tenn. Anesthesiology, P.C.*, 724 S.W.2d 355, 360 (Tenn. Ct. App. 1986) (same); *Gosnell v. Ashland Chem., Inc.*, 674 S.W.2d 737, 739 (Tenn. Ct. App. 1984) ("Whether or not [plaintiff] exercised reasonable care and diligence to discover that she had a compensable injury is a fact for a jury to determine").

Here, although it is difficult to determine at this stage of the litigation exactly if and when anyone has been wronged and if so, who has swindled whom, we hold that on the discovery issue, there is evidence on which a jury could reasonably find for Gilmore. Evidence from Davis's suit against Gallico, Davis's admissions to Gilmore, the release signed by Davis in 1974, and the deposition of Burton corroborating theses events, all create a triable issues of fact regarding the accrual of Gilmore's claims. For example, if Burton, by connivance *or* gullibility credibly reported "no similarity" to Gilmore, a jury could find her reliance reasonable and that she should *not* have known of any cause of action.

Finally, Gallico and Davis argue that Gilmore's claim is unfounded because it is based exclusively upon inadmissable hearsay. The district court has not yet made *any* evidentiary determinations and it is clear to this court that the Rules of Evidence allow several possibilities for the evidence to come before a jury. Burton and Gilmore's sworn depositions may be admitted and a jury could decide the discovery rule question based solely on these two witnesses. Additionally, the testimony of Davis from his lawsuit with Gallico, *Davis v. Gallico*, No. 02-0443 (M.D. Tenn. 2003), describing the meetings between Gallico, Davis, and Burton can be admissible as substantive evidence. For instance, if Davis testifies for the defense, his prior inconsistent statements could be introduced substantively pursuant to Fed. R. Evid. 801(d)(1)(A). *See United States v. Ricketts*, 317 F.3d 540, 544 (6th Cir. 2003) (several of witness's out-of-court statements "were made under oath and hence could be used as substantive evidence"). Conversely, if Davis is unavailable as a witness for the trial, *see* Fed. R. Evid. 804(a)(2) (witness persists in refusing to testify despite a court's order), his testimony in the former action could be admissible against Gallico pursuant to Fed. R. Evid. 804(b)(1) (allowing former deposition testimony). *See United States v. Taplin*, 954 F.2d 1256, 1258 (6th Cir. 1992). This testimony might also be admitted as hearsay under the exception for a statement against interest. *See* Fed. R. Evid. 804(b)(3). Burton's statements to Gilmore regarding what Gallico told him about THE MOST BEAUTIFUL GIRL and Davis's future as a songwriter could be introduced at trial to show their effect on Gilmore, and not for the truth of the matter asserted. *See* Fed. R. Evid. 801(c); *but see* Fed. R. Evid. 805 (hearsay within hearsay). In any event, it

would be imprudent at this stage to credit the appellees' argument that *all* of the evidence presented in opposition to the instant summary judgment motion is inadmissable.

Summary judgement for the defendants based upon the statute of limitations was improper because a genuine issue of material fact exists as to when Gilmore's claims accrued under the discovery rule. We therefore **REVERSE** and **REMAND** for further proceedings consistent with this opinion.